19-2934
*In re: World Trade Center Lower Manhattan Disaster Site Litigation*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of September, two thousand twenty.

PRESENT:
> GERARD E. LYNCH,
> RICHARD J. SULLIVAN,
> MICHAEL H. PARK,
> > *Circuit Judges.*

_____

*In re: World Trade Center Lower Manhattan Disaster Site Litigation*

No. 19-2934[*]

_____

| | |
|---|---|
| **For Plaintiffs-Appellants:** | CHRISTOPHER R. LOPALO (Paul J. Napoli, Nicholas R. Farnolo, *on the brief*), Napoli Shkolnik PLLC, New York, NY. |
| **For Defendant-Appellee:** | Daniel S. Connolly, Rachel B. Goldman, Bracewell LLP, New York, NY; John M. |

_____

[*] For the purposes of this summary order, the above caption has been shortened. The full caption is attached as Addendum A.

Flannery, Wilson Elser Moskowitz Edelman & Dicker LLP, White Plains, NY.

For Intervenor-Appellee:    MARGARET H. WARNER (Sarah P. Hogarth, *on the brief*), McDermott Will & Emery LLP, Washington, DC.

Appeal from the judgment of the United States District Court for the Southern District of New York (Alvin Hellerstein, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants, 124 workers who participated in cleanup efforts at Stuyvesant High School ("Stuyvesant") after the terrorist attacks on the World Trade Center in 2001, appeal from the district court's judgment dismissing their claims as moot and, alternatively, granting summary judgment in favor of Defendant-Appellee Battery Park City Authority ("BPCA") and Intervenor-Appellee WTC Captive Insurance Company, Inc. ("the WTC Captive"). Appellants initially brought their claims under New York Labor Law §§ 200 and 241(6), as well as common-law negligence, alleging that BPCA – as the owner of

2

the ground beneath Stuyvesant – violated its duty to maintain a safe working environment during the cleanup of Stuyvesant after 9/11.

The district court granted BPCA and the WTC Captive's motion to dismiss for lack of subject-matter jurisdiction on mootness grounds, reasoning that Appellants could recover nothing from this action because of the effect of a judgment-reduction provision in Appellants' previous settlement agreement with the WTC Captive. Alternatively, the court converted Appellees' motion to dismiss for failure to state a claim into a motion for summary judgment and granted summary judgment on the merits of Appellants' state-law claims. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

On appeal from a dismissal for lack of subject-matter jurisdiction, including on mootness grounds, we review a district court's factual findings for clear error and its legal conclusions *de novo*. *See Klein v. Qlik Techs., Inc.*, 906 F.3d 215, 220 (2d Cir. 2018). "A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when the parties lack a legally cognizable interest in the outcome." *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (internal quotation marks omitted). Because a settlement resolves the live

3

controversy between parties, we have recognized that a settlement agreement may moot a party's subsequent claims. *See Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 399 (2d Cir. 1997).

Here, the district court properly held that Appellants' 2010 settlement agreement with the WTC Captive and its insureds (the World Trade Center Litigation Final Settlement Agreement, or "FSA") reduced their potential recovery in these proceedings to zero, and that, accordingly, their claims are moot. Under the FSA, Appellants agreed to a so-called "judgment-reduction provision," which limited their potential future recovery against other defendants who had "indemnity claims" against insureds of the WTC Captive.[1] J. App'x at 4310. Such provisions are commonplace in settlement agreements, and we have held that they are enforceable under New York law, in part because they "ensure that the settling defendants do not remain derivatively exposed to claims by the[] plaintiffs in the form of claims for indemnity or contribution by the nonsettling

---

[1] Although one of the appellants, Carlos Asmal, settled his debris removal claims by entering into an individual settlement agreement rather than opting into the FSA, J. App'x at 3262, this individual settlement agreement contained a judgment-reduction provision that was substantively identical to the provision in the FSA, *id.* at 3257. Accordingly, all references in this Summary Order to the FSA's judgment-reduction provision should be taken as also referring to the judgment-reduction provision in this individual settlement agreement.

4

defendants against whom the plaintiffs may obtain judgments." *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1363, 1368–69 (2d Cir. 1991).

## I.     *The FSA's judgment-reduction provision may be applied in this case.*

Although Appellants do not deny entering into the FSA, they argue that the FSA's judgment-reduction provision should not apply to this matter for essentially two reasons.   First, they argue that they discounted their recovery under the FSA based on their understanding that they would be able to recover in the future against defendants like BPCA.   But as the district court emphasized, nothing in the text of the FSA supports this assertion; according to the FSA's recovery formula, "while claims might have been discounted by time spent in a *different* building serving as the basis for liability against another defendant, there was no reduction based on the presence of unsettled claims against more than one defendant in *any single given building*, here, the BPCA at Stuyvesant."   *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, No. 21-MC-102 (AKH), 2019 WL 4168993, at *9 (S.D.N.Y. Aug. 30, 2019) (emphasis added).   And although Appellants claim that they subjectively understood that they would be able to recover against BPCA when they entered into the FSA, under New York law, "[e]xtrinsic evidence of the parties' intent may be considered only if the agreement

5

is ambiguous." *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002). The FSA's judgment-reduction provision clearly and unambiguously limits Appellants' recovery against other defendants with "indemnity claims" against insureds of the WTC Captive, so there is no basis for us to venture beyond the text of the FSA to interpret its terms.[2]

Second, Appellants argue that the judgment-reduction provision should not apply here because the BPCA was not a party to the FSA. While Appellants are correct that the BPCA was not a signatory to the FSA, it *was*, as the district court recognized, "a third party beneficiary of [that] agreement." 2019 WL 4168993, at *8. Indeed, the judgment-reduction provision would serve little purpose if it did not benefit other defendants like BPCA that asserted indemnification claims against insureds of the WTC Captive. *See Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003) ("New York law . . . disfavors interpretations that render contract provisions meaningless or superfluous."). Accordingly, as a third-party beneficiary of the FSA, BPCA is entitled to enforce its terms. *See Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 52 (2d Cir. 2012).

---

[2] Moreover, when given the opportunity at oral argument, Appellants could not point to a single piece of evidence in the record supporting the contention that they (or their counsel) were misled into believing that their claims against the BPCA would be permitted to proceed under the FSA.

## II. BPCA has an indemnity claim against an Insured within the meaning of the FSA's judgment-reduction provision.

Because Appellants have not shown that the FSA's judgment-reduction provision cannot be applied in this case, we turn next to the specific language of that provision, which states in relevant part:

> [T]o the extent that Plaintiffs who opt in to the Final Settlement Agreement . . . are awarded judgment(s) against the Other Defendants . . . with respect to Debris Removal Claims, such Plaintiffs agree to reduce those judgment(s) to the full extent of any and all such Other Defendants' . . . indemnity claims, if any, against the Insureds.

J. App'x at 4310. Appellants do not dispute that (1) this case involves "Debris Removal Claims," (2) BPCA falls within the definition of "Other Defendants" under the FSA, or (3) New York City ("the City") and its Board of Education are "Insureds" of the WTC Captive. Instead, Appellants' argument turns on whether BPCA has an "indemnity claim[]" against the City, and if so, to what "extent." *Id.*

The district court reasoned that BPCA had an "indemnity claim" against the City within the meaning of the FSA because the BPCA "asserted its right to indemnification pursuant to [its] preexisting 1987 [Stuyvesant] lease" with the City. 2019 WL 4168993, at *7. According to the district court, simply asserting the indemnification clause under the 1987 Stuyvesant lease was "sufficient to trigger the judgment reduction provision; the claim does not have to be

7

successful." *Id.* at *8. Appellants, by contrast, argue that BPCA must show that it has a *valid* indemnification claim against the City to be protected by the FSA's judgment-reduction provision.

The FSA does not define the phrase "indemnity claim" or even the word "claim." But in the insurance context, we have previously explained that "the plain and ordinary meaning of 'claim' is a demand for specific relief owed because of alleged wrongdoing." *Windham Solid Waste Mgmt. Dist. v. Nat'l Cas. Co.*, 146 F.3d 131, 133–34 (2d Cir. 1998) (internal quotation marks omitted) (gathering cases and dictionary definitions). Moreover, Black's Law Dictionary defines "claim" as "[a] demand for money, property, or a legal remedy to which one asserts a right." *Claim*, *Black's Law Dictionary* (11th ed. 2019). These definitions appear to support the district court's conclusion that BPCA need only assert its indemnification rights under the 1987 Stuyvesant lease to have an indemnity "claim" against the City. Although Appellants argue that the district court's broad definition of "indemnity claim" would allow *any* defendant to render Plaintiffs' claims moot simply by asserting an indemnification claim against the City – even a wholly frivolous one – the fact remains that even if "indemnity claim" under the FSA means a meritorious claim, BPCA has demonstrated that it has such a claim

8

against the City under the terms of its 1987 Stuyvesant ground lease with the City's Board of Education. Under the terms of that lease, in exchange for leasing the ground rights necessary to build the new Stuyvesant building (the "Premises"), the Board of Education agreed to "indemnify and save . . . harmless" BPCA, as landlord, from all claims arising out of "any work or thing done in or on the Premises," except to the extent those claims "shall have been caused in whole or in part by the negligence or wrongful act of" BPCA. J. App'x at 3062–63. Appellants' claims against BPCA related to the 9/11 cleanup clearly fall within the claims for which the City's Board of Education was required to indemnify BPCA under the lease – namely, "any work or thing done in or on the Premises." *Id.* at 3063. Indeed, the City and the WTC Captive recognized as much when they formally acknowledged the City's duty to indemnify BPCA under the 1987 Stuyvesant lease to the full extent of Appellants' claims.

Plaintiffs argue that the 1987 Stuyvesant lease indemnification carve-out – for liability "caused in whole or in part by the negligence or wrongful act of" BPCA, *id.* at 3063 – means that the City would not be required to indemnify BPCA for Plaintiffs' negligence claims against BPCA.[3] But here, Appellants allege that

---

[3] In addition to their negligence claims under New York common law and Labor Law § 200, Appellants also assert claims against BPCA under Labor Law § 241(6). But as BPCA and the WTC Captive point out

9

BPCA failed "to act as a prudent and reasonable landlord would" by failing to monitor *the City's* management of the Stuyvesant site during the 9/11 cleanup. Appellants' Br. at 30–31.   As the district court explained, "[t]he City cannot invoke an exception to indemnification when the City itself is the negligent party, and the alleged negligence on the part of the indemnitee is failure to supervise and regulate the City's negligence."   2019 WL 4168993, at *8.   Thus, to the extent that Appellants' negligence claims against BPCA are premised upon its failure to supervise the City, those claims fall outside the scope of the negligence carve-out in the 1987 Stuyvesant lease because the Appellants' injuries would have been caused by the City, not the independent "negligence or wrongful act of" BPCA. J. App'x at 3063.

Appellants also assert that BPCA was negligent based upon its independent duty as a landowner to maintain the condition of the premises at Stuyvesant.   *See, e.g.*, *Chowdhury v. Rodriguez*, 867 N.Y.S.2d 123, 128 (2d Dep't 2008) (recognizing that, under Labor Law § 200, liability may be imposed where "worker injuries aris[e] out of the condition of the premises rather than the methods or manner of

---

in response, there is no question that the City would be required to indemnify BPCA for these claims, because vicarious liability under § 241(6) does not constitute "negligence" under New York law.   *See McGuinness v. Hertz Corp.*, 789 N.Y.S.2d 121, 161–62 (1st Dep't 2005) (recognizing the distinction between "active negligence" and "vicarious liability arising from Labor Law § 241(6)").

10

the work"). As a general rule, however, "an out-of-possession landlord may not be held liable for a third party's injuries on [its] premises unless [it] has notice of the defect and has consented to be responsible for maintenance or repair." *Velazquez v. Tyler Graphics, Ltd.*, 625 N.Y.S.2d 537, 538 (1st Dep't 1995). And the terms of the 1987 Stuyvesant lease make clear that BPCA did not "consent[] to be responsible for maintenance or repair." *Id.* To the contrary, BPCA specifically disclaimed any "duty or obligation to make any alteration, change, improvement, replacement, Restoration or repair to, nor to demolish, any Buildings." J. App'x at 3054. As such, Appellants' "premises liability" theory of negligence also falls outside the 1987 Stuyvesant lease's indemnification carve-out.

Accordingly, the district court properly dismissed Appellants' claims as moot because Appellants stand to recover nothing from this case and therefore "lack a legally cognizable interest in the outcome." *Fox*, 42 F.3d at 140 (internal quotation marks omitted).

III. *The district court did not abuse its discretion in denying Appellants additional jurisdictional discovery.*

Appellants' arguments regarding the need for additional discovery on issues related to mootness are without merit for substantially the same reasons that the district court articulated below – namely, that the terms of the FSA and

11

BPCA's 1987 Stuyvesant lease can be interpreted as a matter of law and do not require additional fact discovery. *See* 2019 WL 4168993, at \*9. The district court therefore did not abuse its discretion in denying Appellants additional discovery on the issue of mootness. *See Haber v. United States*, 823 F.3d 746, 754 (2d Cir. 2016) ("We review a district court's denial of jurisdictional discovery for abuse of discretion.").[4]

\*    \*    \*

We have considered Appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] Furthermore, because we affirm the district court's decision to dismiss for lack of subject-matter jurisdiction, we need not reach the issues of whether the district court properly converted Appellees' motion to dismiss into a motion for summary judgment or whether it properly granted summary judgment on the merits of Appellants' state-law claims.

12

## A: Full Case Caption

Carlos Ali, Gloria Alvarez, Maria Alvarez, Jose Alvarracin, Santiago Alvear, Rossina Angulo, Betsy Arruda-Loor, Carlos Asmal, Freddy Astudillo, Wilmer Astudillo, Nolberto Avila, Richard Avila, Rodrigo Barros, Julio Bastidas, Luis Bermeo, Jacek Bogacki, Johnathan Buckley, Hector Buestan, Flor Bunay, Teresa Bunay, Bolivar Caivinagua, Juan Caivinagua, Martha Caiza, Gil Calle, Rodrigo Campozano, Consuelo Campuzano, James Carr, Carlos Castano, Nancy Castillo, Piedad Castillo, Aida Chalco, Manuel Chique, Andrzej Chojnowski, Yolanda Cintron, Freddy Cordero, Jose Coronel, Manuel Cosme, Nancy Criollo, Peter Curley, Mieczyslaw Dabrowski, Flora Davila, Maria DeJesus, Leo DiRubbo, Clara Dota, Glenn Dowd, Stanislaw Drozdz, Angel Duchitanga, Manuel Duchitanga, Maria Duchitanga, Alex Espinoza, Manuel Fares, Aldo Feliciano, Lazaro Fuentes, Rebeca Gallegos, Walter Gallegos, Diana Galli, Edir Giraldo, Malgorzata Grabowska, Samuel Guiracocha, Isaac Hernandez, Jose Herrera, Luis Inga, John Kear, John Kearney, Andrzej Korzep, Segundo Leon, Manuel Lituma, Maria Lluguay, Raul Loja, Wilber Lopez, Walter Marin, Sandra McKay, Carlos Merchan, Richard Miranda, Eugenio Mora, Fabio Morales, Segundo Morales, Como Mordente, Simon Morocho, Jacek Mrozek, Angel Naranjo, Leonardo Naranjo,

Luis Naranjo, Miguel Naula, Segundo Naula, Emil Onzo, Felix Parra, Leydi Parra, Michael Paternostro, Jacqueline Perez, Kazimierz Perkowski, Hernan Pineda, Maria Puma, Manuel Pumacuri, Segundo Quizhpi, Luis Rodriguez, William Rodriguez, Mario Rojas, Jorge Saavedra, Maria Salazar, Lorraine Salgado, Edilberto Sanchez, Jose Sanchez, Juan Sanchez, Wilson Sanchez, Henry Sandoya, Miquel Santana, Fernanda Santos, Edwin Sarmiento, Raul Siguencia, Norma Suco, Mauricio Tabares, Bertha Tache, Stephen Tighe, Aida Torres, Rommel Vasquez, Julio Villafuerte, Segundo Villarroel, Rosalia Vintimilla, Pedro Viscaino, Jan Wolkowicz, Bolivar Zamora, Lawrence Zenteno, Iris Zimmerman,

*Plaintiffs-Appellants*,

v.                                                No. 19-2934

Battery Park City Authority,

*Defendant-Appellee*,

WTC Captive Insurance Company, Inc.,

*Intervenor-Appellee*.*

---

* The Clerk of Court is respectfully directed to amend the caption as set forth in this Addendum.