15-2078-cv
*Haber v. United States*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2015

(Argued: January 29, 2016    Decided: May 20, 2016)

Docket No. 15-2078-cv

JAMES HABER,

*Petitioner-Appellant*,

— v. —

UNITED STATES OF AMERICA, SIGNATURE BANK CORPORATION,

*Respondents-Appellee*s.[*]

B e f o r e:

CALABRESI, LYNCH, and LOHIER, *Circuit Judges*.

Petitioner-appellant James Haber appeals from the district court's dismissal of his suit seeking to quash an Internal Revenue Service ("IRS") summons served on Signature Bank Corporation seeking documents and testimony about the assets held by his wife, Jill Haber.  The district court

---

[*] Signature Bank has not appeared in this matter either below or on appeal.

correctly concluded that it lacked jurisdiction over the suit because the challenged summons was issued "in aid of the collection of . . . an assessment." 26 U.S.C. § 7609(c)(2)(D). We also reject Haber's contention that the IRS lacked authority to issue an administrative summons because a criminal referral to the Department of Justice was in effect, *id*. § 7602(d), as the criminal referral of Haber had been terminated prior to the issuance of the summons. Finally, we conclude that the district court did not abuse its discretion in denying Haber's request for jurisdictional discovery.

AFFIRMED.

---

JASPER G. TAYLOR III (Richard L. Hunn, Katherine D. Mackillop, Felice B. Galant, *on the brief*), Norton Rose Fulbright US LLP, Houston, TX and New York, NY, *for Petitioner-Appellant*.

DOMINIKA TARCZYNSKA (Benjamin H. Torrance, *on the brief*), for Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Respondent-Appellee* United States of America.

---

GERARD E. LYNCH, *Circuit Judge*:

In this case, we consider a number of challenges raised by the petitioner-appellant, James Haber, to an administrative summons issued by the Internal Revenue Service ("IRS"). The district court (Laura Taylor Swain, *Judge*) granted the government's motion to dismiss Haber's petition for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and denied

Haber's request for jurisdictional discovery. For the reasons set forth below, we AFFIRM the decision of the district court.

## BACKGROUND

The IRS issued an approximately $25 million penalty against Haber and his company, The Diversified Group Incorporated ("DGI"), pursuant to 26 U.S.C. § 6707,[1] in connection with their alleged failure to register tax shelters in violation of 26 U.S.C. § 6111.[2] Haber and DGI paid $18,370 and $15,500, respectively, toward that assessment, and concurrently filed refund claims with the IRS. The IRS denied their refund claims and filed a federal tax lien against Haber for the unpaid balance of the penalty. In response, Haber contested the penalty by requesting a Collection Due Process ("CDP") hearing pursuant to 26 U.S.C. § 6320, which has been stayed pending Haber's ongoing litigation.

---

[1] 26 U.S.C. § 6707 provides for the imposition of penalties on anyone who is required to file a return under 26 U.S.C. § 6111(a) and "with respect to any reportable transaction . . . fails to file such return [or] . . . files false or incomplete information . . . with respect to such transaction."

[2] 26 U.S.C. § 6111 requires that "[e]ach material advisor with respect to any reportable transaction shall make a return . . . setting forth – (1) information identifying and describing the transaction, (2) information describing any potential tax benefits expected to result from the transaction, and (3) such other information as the Secretary may prescribe."

Haber and DGI then filed suit in the Court of Federal Claims, arguing that the penalty was erroneously assessed, seeking injunctive relief against the IRS's collection efforts, and requesting a refund of the partial payment. The court dismissed the suit for lack of subject matter jurisdiction because Haber and DGI had failed to pay the full penalty before commencing the suit and did not fall into any of the exceptions to the full payment rule. *Diversified Grp., Inc. v. United States*, 123 Fed. Cl. 442 (2015). An appeal of that decision is pending before the United States Court of Appeals for the Federal Circuit. *Diversified Grp., Inc. v. United States*, No. 16-1014 (Fed. Cir. Oct. 6, 2015).

Concurrently with that ongoing litigation, an IRS Revenue Officer began conducting an investigation to locate assets to satisfy the unpaid penalty. According to the Revenue Officer, her investigation "suggest[ed] that [Haber] may have access to, and use of, a bank account or bank accounts held in the name of Jill Haber [Haber's wife] at Signature Bank, and that such account or accounts may be held in the name of Jill Haber to shield them from the IRS." J.A. 33 ¶ 6. She further asserted that assets held by Jill Haber "as the nominee or alter-ego or transferee of [Haber]" may be used "to satisfy the 26 U.S.C. § 6707 penalty liability of [Haber]." J.A. 34 ¶ 7. The Revenue Officer confirmed with the IRS

4

Criminal Investigation Division that it had closed its investigation of Haber and that there were no other pending criminal investigations of Haber, and informed Haber's representative of this information.

The Revenue Officer then served the administrative summons at issue in this case on Signature Bank Corporation. That summons was captioned "[i]n the matter of James Haber," and sought testimony and documents "for any and all accounts that Jill Haber ha[d] signatory [authority] for" from January 1, 2013 to the date of the summons. J.A. 23. No penalties had been assessed against Jill Haber. The summons stated that the IRS sought "data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning [James Haber]." J.A. 23.

Haber petitioned the district court to quash the summons, arguing among other things that the IRS was precluded from issuing the summons by an outstanding criminal referral in his case. The government moved to dismiss the petition for lack of subject matter jurisdiction on the ground that this summons falls into a category for which the United States has not waived its sovereign immunity, specifically, a summons "issued in aid of the collection of . . . an

5

assessment." 26 U.S.C. § 7609(c)(2)(D). In a declaration attached to the government's motion to dismiss, the Revenue Officer declared that the summons was to "aid in the collection of [Haber's] . . . liability for a penalty" and that "[t]he IRS has already made an assessment against [Haber] for this liability, which currently is approximately $25,000,000." J.A. 32-33 ¶ 3. Further, the Revenue Officer attested that "[t]he sole purpose of [her] investigation is to locate assets to satisfy [Haber's] existing assessed federal tax liability, and not to determine additional federal tax liabilities of [Haber] or any other person or entity." J.A. 33 ¶ 4.

Haber sought jurisdictional discovery to establish that the summons did not fall within the exception to the United States's waiver of sovereign immunity for proceedings to quash third-party summonses. 26 U.S.C. § 7609(b), (c)(2). Haber served the government with a request for production of documents and noticed the deposition of the Revenue Officer who was conducting the investigation into Haber's assets and who had served the summons.

In response to Haber's petition, the government produced three documents regarding the termination of the IRS's criminal referral of Haber to the Department of Justice ("DOJ"): a supplemental declaration from the Revenue

6

Officer explaining the steps she took to confirm that there were no pending criminal investigations of Haber, a letter from the DOJ, and a letter from the U.S. Attorney. The first letter, sent in 2009 by the Acting Assistant Attorney General of the Tax Division of DOJ to the Special Agent in Charge of the IRS Criminal Investigation Division, states that: "The referral of this matter is terminated as to James Haber as to all matters except the Form 1099 issue, within the meaning of Section 7602(d) of the Internal Revenue Code." J.A. 41. The second letter, sent in 2011 by the United States Attorney for the Southern District of New York to Haber's lawyer, William B. Wachtell, states:

> the United States Attorney's Office for the Southern District of New York and the Internal Revenue Service's New York Field Office have closed their respective criminal investigations of Mr. Haber and his companies [including the 1099 issue] . . . . In addition, based on my discussions with representatives of the Department of Justice's Tax Division . . . , there are no other criminal investigations pending with respect to Mr. Haber.

J.A. 45. After providing those documents, the government moved for a protective order with respect to Haber's discovery requests.

The district court granted the government's motions to dismiss Haber's petition to quash the IRS summons for lack of subject matter jurisdiction and for

7

a protective order barring jurisdictional discovery.  This appeal followed.

## DISCUSSION

We agree with the district court that it lacked jurisdiction because the United States has not waived sovereign immunity to allow suits to quash summonses that are "issued in aid of the collection of . . . an assessment," 26 U.S.C. § 7609(c)(2)(D), and that the challenged summons was issued in aid of collection.  Moreover, the IRS had authority to issue the summons, as there was not an outstanding criminal referral at the time the summons was issued.  We also hold that the district court did not abuse its discretion in denying jurisdictional discovery because Haber did not meet his burden of showing that the requested discovery is likely to produce the facts needed to establish jurisdiction.

I.     Subject Matter Jurisdiction

Generally a person identified as the target of an IRS summons served on a third party, like a bank, is entitled to notice of the summons.  The United States has waived its sovereign immunity to allow a person "entitled to notice" to bring suit against it to quash a summons.  *Id.* § 7609(a), (b)(2)(A).  But the right to notice and to bring a proceeding to quash, "shall not apply to any summons . . . issued

in aid of the collection of . . . an assessment made . . . against the person with respect to whose liability the summons is issued." *Id*. § 7609(c)(2).[3] Therefore, if a summons is "issued in aid of the collection" of a taxpayer's liability, the United States has not waived its sovereign immunity.

We review a district court's dismissal for lack of subject matter jurisdiction de novo. *Upton v. I.R.S.*, 104 F.3d 543, 545 (2d Cir. 1997). A plaintiff bears the burden on demonstrating that sovereign immunity has been waived. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). We conclude that the challenged summons was issued in aid of collection of an assessment. Accordingly, the United States has not waived its sovereign immunity, and the district court lacked jurisdiction over the motion to quash.

To determine whether the United States has waived sovereign immunity, we engage in a preliminary review of the IRS's contention that it issued the

---

[3] This exception reflects Congress's recognition that "giving taxpayers notice in certain circumstances would seriously impede the IRS's ability to collect taxes." *Ip v. United States*, 205 F.3d 1168, 1172 (9th Cir. 2000). Without this exception, "there might be a possibility that the taxpayer, transferee or fiduciary would use the . . . grace period, which is provided under [the statute to give a person entitled to notice the opportunity to challenge the summons], to withdraw the money in his account, thus frustrating the collection activity of the Service." H.R. Rep. No. 94–658, at 310 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2897, 3206.

9

challenged summons in aid of collection. *Cf. Upton*, 104 F.3d at 547 (holding that the United States had not waived sovereign immunity after a preliminary assessment of the summons); *United States v. Clarke*, 134 S. Ct. 2361, 2367 (2014) (explaining that Congress's recognition that "power vested in tax collectors may be abused" led it to make "enforcement of an IRS summons contingent on a court's approval" (internal quotation marks omitted)).

The Revenue Officer declared, under penalty of perjury, that the challenged  summons was issued to aid in collection:

> In my capacity as a Revenue Officer, I am conducting an investigation to aid in the collection of Petitioner James Haber's ("Petitioner's") liability for a penalty pursuant to 26 U.S.C. § 6707 for the year [that]ended on December 31, 1999.  The IRS has already made an assessment against Petitioner for this liability, which currently is approximately $25,000,000.  The IRS assessed the penalty because Petitioner failed to register tax shelters in the proper manner.

J.A. 32-33.  Haber argues that despite this attestation, we should conclude that the summons was not issued to aid in the collection of the assessment against Haber because, due to Haber's various pending legal challenges to the assessment, the IRS cannot begin actual collection of the assessment.  We are unpersuaded.

Congress has exempted the IRS from the requirements of notice and judicial review, and thus from its waiver of sovereign immunity, where a summons is "issued in aid of the collection of . . . an assessment made . . . against the person with respect to whose liability the summons is issued." 26 U.S.C. § 7609(c)(2)(D). The statute requires only that the IRS has made an "assessment," which is "the official recording of liability that triggers levy and collection efforts." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004); *see also* 26 U.S.C. § 6203 ("The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary."). The district court found, and Haber does not contest, that the IRS has made an assessment against Haber.

Nothing in the statute provides that a summons may be issued in aid of collection, as Haber contends, only where the IRS has the present authority to collect on the assessment or the actual collection is "imminent." Appellant's Br. 10. We decline to read those words into the statute. The text of the exception includes all summonses "issued *in aid of* the collection of . . . an assessment." 26 U.S.C. § 7609(c)(2)(D) (emphasis added). "[I]n aid of" is broad general language, and that language is not limited by a requirement that actual collection must be

11

imminent or immediately possible.

Haber asserts that due to his litigation options for contesting the penalty, his "liability for the penalty, if any, will not be established for years, and it is undisputed that meanwhile the IRS may not collect any part of the Assessment." Appellant's Br. 7. Whether or not the government can currently pursue any avenues of collection of the assessment is immaterial because the statute requires only that the IRS has issued an "assessment," not that it is able immediately to collect on it. The policy rationale for such an exception is apparent. Even if the IRS is not immediately able to collect on an assessment, it has a strong interest in locating potential assets that may be used for collection if and when the taxpayer's legal challenges are exhausted and the assessment is enforced. Taxpayers are not entitled to a head start in hiding assets while they challenge an IRS assessment in court. Congress could, of course, decide to limit the category of summonses in aid of collection that are exempt from the notice provisions of the Internal Revenue Code, but there is no reason to assume that it has done so in the absence of any statutory language suggesting such a limitation.

Moreover, Haber alleges no facts that support an inference that the IRS summons was issued for any other purpose than in aid of collection. Haber

12

offers no affirmative reason to believe that there was any ulterior purpose to the summons. Rather, he argues that because the IRS cannot currently collect on the assessment, "the IRS can have no logical reason to look for assets now," Appellant's Br. 15, and therefore "[o]ne can infer that it *must* be true that [the] Summons was issued for some other purpose," *id.* 16 (emphasis original). We disagree. As noted above, it is perfectly reasonable that once the IRS has made an assessment it would start tracking the taxpayer's assets to identify assets it can collect from in the future and to ensure that the resources are not dissipated. We therefore see nothing in the record that casts doubt on the Revenue Officer's declaration, or any basis from which we could infer that the IRS acted with some alternative purpose, and not in aid of collection, in issuing the summons.

II.     Authority to Issue the Summons

The IRS is not permitted to issue an administrative summons when a "Justice Department referral is in effect," 26 U.S.C. § 7602(d)(1), as when the IRS recommends to the Attorney General that a grand jury investigation or criminal prosecution be instituted with respect to an offense connected with the internal revenue laws. *Id.* § 7602(d)(2)(A)(i). Haber argues that the prior referral for a criminal investigation of Haber had not been effectively terminated when the

13

challenged summons was issued.  That contention lacks  merit.

Section 7602(d)(2)(B) provides that "[a] Justice Department referral shall cease to be in effect with respect to a person when . . . the Attorney General notifies the Secretary, in writing, that . . . he will discontinue such a grand jury investigation."  *Id.* § 7602(d)(2)(B).[4]  Haber argues that the government cannot terminate a referral unless it tracks the precise language from the statute and states in writing that the Attorney General "'will *discontinue* such a grand jury investigation,'" Appellant's Br. 19 (emphasis original), and not any "elegant variation" of those words, Appellant's Reply Br. 17.  But there is no magic to the word "discontinue" such that a written declaration that the referral has been terminated is ineffective unless that precise word is used.

The 2009 letter from the DOJ to the IRS states that "[t]he referral of this matter is *terminated* as to James Haber . . . within the meaning of Section 7602(d) of the Internal Revenue Code."  J.A. 41 (emphasis added).  The letter effectively accomplished exactly what it purported to do – it terminated the referral.

---

[4] The term "Secretary," as distinct from the separate term "Secretary of the Treasury," is defined as "the Secretary of the Treasury or his delegate."  26 U.S.C. § 7701(11).  Haber does not contend that the person to whom the letter in question is addressed, the Special Agent in Charge of the IRS Criminal Investigation Division, is not an appropriate recipient.

14

Nothing in the statutory text suggests that § 7602(d)(2)(B) specifies a particular formula to be used in discontinuing a referral.  There is no logical reason to think that stating that the referral is "terminated" within the meaning of the very statute at issue is any less effective than stating that the referral is "discontinued."  It is fanciful to suggest that the government crafted the letter to create the *appearance* of discontinuing the referral without actually doing so.  Apart from the fact that Haber suggests no plausible motive for such a maneuver, it is evident that any such effort would fail – the government would be laughed out of court if it ever suggested that the 2009 letter had *not* discontinued the referral, or that the referral somehow remained in effect after the letter had been sent.  The letter thus was sufficient to meet the requirements in § 7602(d)(2)(B) to terminate the DOJ referral.  Moreover, a second letter from the United States Attorney in charge of the investigation to Haber's lawyer confirmed not only that the referral had been terminated, but that all criminal investigations of Haber had been closed, as of 2011, well before the challenged summons was issued in 2014.

Because Haber has not alleged any facts making it plausible that a DOJ criminal referral was in effect when the Revenue Officer served the challenged

15

summons in 2014, we need not decide whether a summons that was issued in aid of collection could be quashed because of the existence of a criminal referral at the time it was issued.

III.    Denial of Jurisdictional Discovery

In general, a plaintiff may obtain discovery in connection with issues related to the court's jurisdiction.  "[A] court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction."  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 149 (2d Cir. 2011) (internal quotation marks omitted); *see All. of Am. Insurers v. Cuomo*, 854 F.2d 591, 597 (2d Cir. 1988) ("Before dismissing a case for want of jurisdiction, a court should permit the party seeking the court's intervention to engage in discovery of facts supporting jurisdiction.").

But a district court does not abuse its discretion if it denies jurisdictional discovery where a plaintiff "failed to show how the information [she] hoped to obtain from this discovery would bear on the critical issue" for jurisdiction. *Gualandi v. Adams*, 385 F.3d 236, 245 (2d Cir. 2004); *see Amidax*, 671 F.3d at 149; *see also Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009) ("[A] party is not entitled to jurisdictional discovery if the record shows that the requested

16

discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion.").

The Supreme Court has recently described the showing required for a taxpayer to question an IRS agent. In a case where the government affirmatively invokes the court's authority to enforce a summons, the Court explained that the

> taxpayer is entitled to examine an IRS agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith. Naked allegations of improper purpose are not enough: *The taxpayer must offer some credible evidence supporting his charge. . . .* And although bare assertion or conjecture is not enough, neither is a fleshed out case demanded: The taxpayer need only make a showing of *facts that give rise to a plausible inference of improper motive*. That standard will ensure inquiry where the facts and circumstances make inquiry appropriate, without turning every summons dispute into a fishing expedition for official wrongdoing.

*Clarke*, 134 S. Ct. at 2367-68 (emphasis added); *see also United States v. Millman*, 765 F.2d 27, 29 (2d Cir. 1985) ("Where a taxpayer has made a substantial preliminary showing of such abuse, he is entitled to an opportunity to substantiate his allegations by way of an evidentiary hearing." (internal quotation marks omitted)).

The district court granted the government's motion for a protective order,

17

thereby denying Haber's motion for jurisdictional discovery, on the ground that Haber "set forth no facts supporting a colorable claim that the Summons was issued for a purpose other than to aid in collecting his tax assessment." J.A. 119. We review a district court's denial of jurisdictional discovery for abuse of discretion. *Carpenter v. Republic of Chile*, 610 F.3d 776, 780 (2d Cir. 2010). Because Haber's request for jurisdictional discovery is based entirely on conclusory and implausible allegations, the district court did not abuse its discretion in deciding that Haber did not meet his burden of showing he was entitled to jurisdictional discovery generally, or the deposition of the Revenue Officer specifically.

The Revenue Officer declared under penalty of perjury that she is "conducting an investigation to aid in the collection of Petitioner James Haber's . . . liability for a penalty" and the "sole purpose of [her] investigation is to locate assets to satisfy Petitioner's existing assessed federal tax liability." J.A. 32-33 ¶ 3-4. Further, the Revenue Officer attested that the "information and documents gathered from the [challenged] summons may assist the IRS in locating assets that are held by Jill Haber, as the nominee or alter-ego or transferee of Petitioner." J.A. 33-34 ¶ 7.

18

Haber argues that he has met his burden for jurisdictional discovery and to depose the Revenue Officer for three reasons: "[1] there is circumstantial evidence 'giving rise to a plausible inference' that the Declaration is false in that there is no reason for the Summons to be 'in aid of collection'; [2] the Summons is internally contradictory and contradicts the Declaration; and [3] substantial evidence exists that the . . . revenue officer declarant . . . is simply not credible." Appellant's Br. 32. The district court did not abuse its discretion in holding that such entirely conclusory allegations did not give rise to a plausible inference that discovery would allow Haber to establish that the summons was not issued in aid of collection or was issued without authority, which may allow Haber to establish jurisdiction.

First, for the same reasons we concluded that Haber's argument that the challenged summons was not in aid of collection was meritless, we reject Haber's conclusory allegation that "the IRS could not possibly be employing its limited resources to identify assets for" the purpose of collection because "[i]t would not make any sense." *Id.* 32. As discussed above, it is perfectly logical that the IRS would investigate the assets of someone against whom it has already issued an assessment before it begins, or can begin, collection.

19

Second, Haber's contention that there are"technical" inconsistencies within the Revenue Officer's declaration and between the declaration and the summons, Appellant's Br. 34, is also unpersuasive. Haber argues that if "Jill Haber is liable as a transferee or alter ego she would be personally liable for the penalty," which "technically contradicts" the statement in the Revenue Officer's declaration that her investigation is "not to determine additional federal tax liabilities of any other person" besides Haber. *Id.* 33 (alterations and italics omitted). Even if Jill Haber would become personally liable for her husband's tax liability, that fact does not transform a summons to locate assets of Haber's held in Jill Haber's name into one to investigate Jill Haber's tax liability. Thus the declaration is not internally inconsistent.

Haber's assertion that the declaration contradicts language in the summons is a somewhat closer call. The summons states that Signature Bank is summoned to give documents and testimony "relating to the tax liability *or* the collection of the tax liability *or* for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning [Haber]." J.A. 14 (emphasis added). In contrast to the three reasons stated in the summons, the Revenue Officer's declaration states that the "sole

20

purpose of [her] investigation is to locate assets to satisfy Petitioner's existing assessed federal tax liability." J.A. 33 ¶ 4.

The district court found that the inclusion of three alternative bases for the summons was the result of the use of a form summons containing boilerplate language. J.A. 119 n.1. We identify no error in the district court's conclusion that the potential contradiction, which can be explained by the use of a boilerplate form, does not constitute "facts and circumstances plausibly calling the Government's assertions into doubt," J.A. 119 n.1, and thus does not provide a basis to grant Haber jurisdictional discovery.[5]

Finally, there is no merit to Haber's claim that the Revenue Officer "is simply not credible," Appellant's Br. 32, because she did not include information about the criminal referral in her first declaration or mention that the United States Attorney was unwilling to grant Haber immunity, *id*. 35. Haber theorizes that maybe "the Summons is actually in pursuit of a *planned* investigation, and the collection of the Assessment is mere pretext." *Id*. 36 (emphasis original). But

---

[5] Of course, to the extent that the government intends to serve a summons "in aid of collection," and thus deny courts jurisdiction over suits to quash the summons, it would be prudent not to use boilerplate forms that might imply that the summons does not fit into this narrow category.

21

such speculation does not offer "credible evidence supporting his charge" or show "facts that give rise to a plausible inference of improper motive." *Clarke*, 134 S. Ct. at 2367-68. The district court did not abuse its discretion in finding that such unfounded and speculative accusations did not satisfy Haber's burden to show that he was entitled to jurisdictional discovery. *See Amidax*, 671 F.3d at 148.[6]

## CONCLUSION

We have considered all of Haber's other arguments and find them to be without merit. The opinion of the district court is AFFIRMED.

---

[6] Any reliance Haber places on the Revenue Officer's use of a pseudonym in the challenged summons and her declarations as a reason to impugn her credibility is misplaced. That is a common practice, which is authorized by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, § 3706, 112 Stat. 685, 778 (codified at 26 U.S.C. § 7804 note), and regulated by IRS procedures, *see* IRS, Internal Revenue Manual 10.5.7, Use of Pseudonyms by IRS Employees (July 29, 2015). Haber has suggested no reason that in this case the use of a pseudonym was improper or calls the Officer's credibility into question.