RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0082p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

KIMBERLY BASEHART GAETANO; RICHARD GAETANO,

　　　　　　　　　　*Petitioners-Appellants*,

　　*v.*

UNITED STATES OF AMERICA,

　　　　　　　　　　*Respondent-Appellee*.

⎤
⎟
⎟
⎟
⎬　　No. 20-1902
⎟
⎟
⎟
⎦

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:19-mc-51563—Marianne O. Battani, District Judge.

Decided and Filed:  April 9, 2021

Before:  GUY, DONALD, and MURPHY, Circuit Judges.

───────────────

**COUNSEL**

───────────────

**ON BRIEF:**  Joseph Falcone, JOSEPH FALCONE, P.C., Southfield, Michigan, for Appellants. Elissa Hart-Mahan, Joan I. Oppenheimer, DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

───────────────

**OPINION**

───────────────

RALPH B. GUY, JR., Circuit Judge.  The Internal Revenue Service (IRS) issued a summons to a point-of-sale systems provider, seeking records related to Richard and Kimberly Gaetano and their cannabis businesses.  Alleging the summons was issued in bad faith, the Gaetanos brought this action to quash the summons under 26 U.S.C. § 7609.  The district court dismissed the action for lack of subject-matter jurisdiction because the Gaetanos lacked standing.

On appeal, the Government argues that § 7609 only waives the United States' sovereign immunity to allow taxpayers to bring an action to quash certain third-party IRS summonses. As a matter of first impression, we conclude that the immunity waiver in § 7609 is subject to the statute's exceptions. One of those exceptions applies because the summons here was issued by an IRS criminal investigator "in connection" with an IRS criminal investigation and the summoned party is not a third-party recordkeeper. *See* 26 U.S.C. § 7609(c)(2)(E). Without a statutory waiver of the United States' sovereign immunity, subject-matter jurisdiction cannot obtain. Accordingly, we affirm.

I.

A.

Kimberly and Richard Gaetano own several cannabis dispensary businesses located in Michigan. The IRS at some point began a criminal investigation of the Gaetanos to determine whether they owed federal taxes. On October 9, 2019, Special Agent Tyler Goodnight of the IRS's Criminal Investigation Division and another IRS agent interviewed the owners of Portal 42, LLC. Portal 42 is a software company that provides the cannabis industry with point-of-sale systems, featuring the capacity for businesses to track customer sales data or delete the data remotely with a "kill switch." The owners of Portal 42 confirmed that the Gaetanos are clients.

At the conclusion of the interview, Agent Goodnight served Portal 42 with a summons. The summons ordered Portal 42 (and its agent) to appear before Agent Goodnight to "give testimony" and produce various records "and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning [the Gaetanos] *for the periods shown*." (Emphasis added). Above that statement, in the space labeled "Periods," it states "01/01/2015 to 09/01/2019." The attachment to the summons directed Portal 42 to produce "[a]ny and all" records related to the Gaetanos or one of their businesses (including records of sales, deliveries, and the hours employees worked) for the same period noted on the face of the summons—January 1, 2015 to September 1, 2019. The IRS did not notify the Gaetanos about the summons.

A few weeks later, Portal 42 sent Agent Goodnight an email with a hyperlink to the requested records. An IRS computer investigative specialist copied the documents to a disc, and the disc was placed in a sealed envelope. Agent Goodnight has not viewed the records Portal 42 produced, nor have any other personnel in the IRS's Criminal Investigation Division.

B.

On October 23, 2019, the Gaetanos filed a petition against the United States under 26 U.S.C. § 7609, seeking to quash the summons issued to Portal 42. In the petition, the Gaetanos alleged that the IRS should have notified them about the summons and that it was issued in bad faith. The district court referred the case to a magistrate judge.

The Government filed a motion to dismiss the petition and enforce the summons, arguing that, because Portal 42 is not a "third-party recordkeeper," the notice exception in § 7609(c)(2)(E) applies and, thus, the Gaetanos "lack standing to quash the summons." The Government attached a declaration from Agent Goodnight, stating that he was "conducting a criminal investigation to determine whether [the Gaetanos] understated their tax liability in violation of the Internal Revenue Code" and that the records summoned "are relevant and necessary" to that investigation. In opposition, the Gaetanos conceded that Portal 42 is not a third-party recordkeeper within the meaning of 26 U.S.C. § 7603(b)(2)(J), but asserted that there could be no criminal investigation for 2019 because (at the time) a tax return for 2019 was not yet due and because "Agent Goodnight's affidavit does not mention the tax years he is investigating."

The Government then shifted theories in its reply. It argued that § 7609(c)(2)(E) is an exception to the United States' sovereign immunity waiver for petitions to quash, and that the exception applied "because Agent Goodnight is a criminal investigator for the IRS" and Portal 42 is not a third-party recordkeeper. The Government also attached a supplemental declaration from Agent Goodnight, clarifying that he was "conducting a criminal investigation into [the Gaetanos for the] alleged filing of false income tax and employment tax returns for tax years 2015 through 2018, and quarterly filings for 2019." The Gaetanos filed a supplemental brief to reiterate their position. Relying on a different summons—which Agent Goodnight had issued to

JP Morgan Chase Bank on November 20, 2019, seeking the Gaetanos' records related to the "Periods" of "01/01/2015 to 11/01/2019"—the Gaetanos asserted that there are no tax periods that end on November 1, 2019, and "the IRS is simply changing the tax periods under investigation as time goes on."[1]

After a hearing on the motion, the magistrate judge dismissed the Gaetanos' petition to quash for lack of subject-matter jurisdiction because the Gaetanos "don't have standing" under § 7609. Nonetheless, the magistrate judge ordered that the summons be enforced because the Gaetanos had failed to establish that the summons was issued in bad faith. The Gaetanos filed objections.

The district court overruled most of the Gaetanos' objections, concluding that the petition to quash must be dismissed for lack of subject-matter jurisdiction because the facts fit within the exception in § 7609(c)(2)(E). But the court set aside the portion of the magistrate judge's order that enforced the summons because, without subject-matter jurisdiction over the Gaetanos' case, the court concluded such relief could not be granted and, in any event, the court noted that the Government had stated "Portal 42 ha[d] already complied."[2]

The Gaetanos appeal.

---

[1]The summons to JP Morgan Chase Bank is not at issue here. That summons is part of a separate action the Gaetanos brought to challenge the IRS summonses served on nine different financial institutions. *See Gaetano v. United States*, No. 19-MC-51772, 2020 WL 6118488, at *1 (E.D. Mich. Oct. 16, 2020). In that case, the district judge adopted the magistrate judge's order granting the Government's motion, dismissing the petition to quash, enforcing the summons, and denying the Gaetanos' motion for an evidentiary hearing and discovery. *See id.* at *4. The Gaetanos' appeal from that decision is pending in Case No. 20-2182, and briefing is not yet complete. Jurisdiction is not in question in that case, so there does not appear to be any meaningful overlap with this case.

[2]That Portal 42 has already complied with the summons does not render this case moot. "Even though it is now too late to prevent, or to provide a fully satisfactory remedy for, the [alleged] invasion of privacy that occurred when the IRS obtained the [records from Portal 42], a court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession. The availability of this possible remedy is sufficient to prevent this case from being moot." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992); *see also* 26 U.S.C. § 7609(d)(2) ("No examination of any records required to be produced under a summons as to which notice is required . . . may be made . . . where a [timely] proceeding [to quash the summons]" was initiated, unless authorized by an order of a "court having jurisdiction of such proceeding" or by the person that began the proceeding.).

II.

"[T]he party asserting federal jurisdiction when it is challenged has the burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). How the court resolves a subject-matter jurisdiction challenge depends on whether the motion presents a "facial attack or a factual attack." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). A "facial attack" is asserted when the movant accepts the alleged jurisdictional facts as true and "questions merely the sufficiency of the pleading" to invoke federal jurisdiction. *Gentek*, 491 F.3d at 330. A "factual attack," by contrast, is advanced when the movant contests the alleged jurisdictional facts by introducing evidence outside the pleadings. *See id.*; *Amburgey v. United States*, 733 F.3d 633, 636 (6th Cir. 2013). Here, the Government mounts a factual attack by relying on Agent Goodnight's affidavits.

In such a case, "the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts," *Gentek*, 491 F.3d at 330, and "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Carrier Corp.*, 673 F.3d at 440. Factual findings made by the district court are reviewed for clear error. *Id.* But "review of the district court's *application of the law* to the facts is *de novo*." *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir. 2017) (quoting *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996)).

III.

The Government asserts sovereign immunity as a jurisdictional bar to this action. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature." *Id.* It implicates a court's subject-matter jurisdiction because the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *See id.* (citation omitted); *see also Brownback v. King*, 141 S. Ct. 740, 749 (2021). An action to quash a summons issued by the IRS is a suit against the United States requiring a waiver of its

sovereign immunity. *See Clay v. United States*, 199 F.3d 876, 879 (6th Cir. 1999); *Barmes v. United States*, 199 F.3d 386, 388 (7th Cir. 1999); *Taylor v. United States*, 292 F. App'x 383, 385 (5th Cir. 2008). Any "waiver of sovereign immunity must be 'unequivocally expressed' in statutory text," *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 290 (2012) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)), and must be "strictly construed, in terms of its scope, in favor of the sovereign." *Lane*, 518 U.S. at 192; *Orff v. United States*, 545 U.S. 596, 601-02 (2005).

The Gaetanos claim jurisdiction obtains under 26 U.S.C. § 7609. We disagree. The United States' sovereign immunity waiver in § 7609 is limited by certain exceptions—one of which applies to the facts of this case. *See* 26 U.S.C. § 7609(c)(2)(E).

1.

Congress directed the IRS to investigate persons "who may be liable to pay any internal revenue tax." 26 U.S.C. § 7601(a). In conducting its investigations, the IRS is authorized by statute to summon not only the person under investigation, but also any third-party the IRS "may deem proper" to obtain information "as may be relevant or material" to an IRS investigation. *See id*. § 7602(a)(2). Recognizing that a summoned third-party who is not itself the target of an IRS investigation would have "little incentive" to oppose the summons, Congress built in safeguards in § 7609. *See Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 320-21 (1985). But not every third-party IRS summons is covered. *See* 26 U.S.C. § 7609(c)(2). For taxpayers whose information is identified in a qualifying third-party IRS summons, § 7609 establishes notice procedures and a limited means of challenging the summons. *See id.* § 7609(a)-(b), (c)(2).

Section 7609(h)(1) confers federal-court jurisdiction in a confined category of cases. As relevant here, this jurisdictional grant covers "any proceeding brought under subsection (b)(2)." 26 U.S.C. § 7609(h)(1).

In turn, § 7609(b)(2) waives the United States' sovereign immunity for a narrow class of taxpayers to initiate an action to quash a third-party IRS summons. *See, e.g.*, *Clay*, 199 F.3d at 879; *Haber v. United States*, 823 F.3d 746, 750-51 (2d Cir. 2016); *Upton v. IRS*, 104 F.3d 543, 545-46 (2d Cir. 1997) (per curiam). The Government concedes as much. Section 7609(b)(2), provides, in part: "Notwithstanding any other law or rule of law, any person *who is entitled to*

*notice of a summons* under subsection (a) shall have the right to begin a proceeding to quash such summons[.]"    26 U.S.C. § 7609(b)(2)(A) (emphasis added).    As a general rule, § 7609(a) requires the IRS to provide notice to the taxpayer(s) whose records are identified in a third-party summons. *See id.* § 7609(a)(1).

Section 7609(c)(2), however, excludes certain categories of summonses (five in all) from coverage under the statute.    *Id.* § 7609(c)(2) ("[Section 7609] shall not apply to any summons . . .").    The Government contends that if one of the exceptions applies—in particular, § 7609(c)(2)(E)—then the sovereign immunity waiver that authorizes an action to quash an IRS summons does not apply, and the district court lacks subject-matter jurisdiction.

2.

There are two ways that courts have viewed the exceptions in § 7609(c)(2)(E): limitations on statutory standing or (as the Government argues) exceptions to § 7609's sovereign immunity waiver.    This presents an issue of first impression for the Sixth Circuit.    We elect to take the latter approach.

Although the district court did not specify which of these two grounds it relied upon in dismissing the case for lack of subject-matter jurisdiction, the district court did not set aside the magistrate judge's conclusion that the Gaetanos "don't have standing" under § 7609.   Some courts have taken this same approach. *See, e.g.*, *Viewtech, Inc. v. United States*, 653 F.3d 1102, 1104, 1106 (9th Cir. 2011) (concluding that, because the exception in § 7609(c)(2)(D) for a summons issued "in aid of the collection" applied, claimants were not entitled to notice of the summons, and thus, claimants lacked *standing* to quash the summons); *Stewart v. United States*, 511 F.3d 1251, 1253 (9th Cir. 2008) ("[A]ny person entitled to notice of an IRS administrative summons's issuance to a third party has standing to challenge the validity of that summons."); *see also Garrett v. United States*, 124 F.3d 197, 1997 WL 468322, at *2 (6th Cir. 1997) (table) (per curiam) (interpreting § 7609 before the 1998 amendments and holding that "only a summons directed to a third-party recordkeeper, as defined by the statute, requires notice to the person(s) identified in the summons, and only a person entitled to notice may institute a proceeding to quash the summons"). That reasoning is consistent with so-called "'statutory'

standing requirements." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1302 (2017) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)). Statutory standing is determined by the "zone-of-interests test." *See Lexmark*, 572 U.S. at 129-30. Applied here, the question would be whether the Gaetanos fall "within the class of plaintiffs whom Congress has authorized to sue under [§ 7609(b)(2), after considering any applicable exceptions under subsection (c)(2)]." *See id.* at 128; *see also POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014) (explaining that the Lanham Act's "cause of action is for competitors, not consumers").

We decline to rely on the statutory standing rubric. There is no doubt that the exceptions in § 7609(c)(2) limit the class of taxpayers entitled to notice and, thus, qualify which persons have standing to sue under § 7609(b)(2). So then why does it matter? The problem is statutory standing is not always *jurisdictional* because "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *Lexmark*, 572 U.S. at 128 n.4 (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642-43 (2002)). Sovereign immunity is not so nebulous. *See Brownback*, 141 S. Ct. at 749; *Cooper*, 566 U.S. at 290-91; *Meyer*, 510 U.S. at 475. Moreover, it matters because a government official or attorney cannot waive the sovereign immunity of the federal government, and the issue can be raised at any stage of the litigation, even in a collateral attack on a judgment. *See, e.g.*, *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 513-14 (1940); *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 623 (2002) (collecting cases and noting that the rule is different in the context of a State's sovereignty under the Eleventh Amendment); *Dickerson ex rel. Dickerson v. United States*, 280 F.3d 470, 478 (5th Cir. 2002); *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1098-99 & n.6 (9th Cir. 2016). And courts have an obligation to address the issue *sua sponte*. *See, e.g.*, *Perry Cap., LLC v. Mnuchin*, 864 F.3d 591, 618-19 (D.C. Cir. 2017). As such, there is good reason for us to address first and foremost whether the immunity waiver in § 7609 applies.

Other circuit courts have concluded that § 7609(c)(2) delineates exceptions (or conditions) to the United States' sovereign immunity waiver. *See, e.g.*, *Haber*, 823 F.3d at 751 (holding that under the exception in § 7609(c)(2)(D), the United States has not waived its

sovereign immunity for challenges to any summons "issued in aid of the collection" of an assessment); *Maehr v. Comm'r*, 641 F. App'x 813, 815 (10th Cir. 2016) (same); *Taylor*, 292 F. App'x at 386-87 (concluding that § 7609(c)(2)(E) is an exception to the United States' waiver of sovereign immunity); *see also Upton*, 104 F.3d at 545, 547 (explaining that, before the 1998 amendments, the summoned party's status as a "third-party recordkeeper" is a prerequisite to the sovereign immunity waiver in § 7609).**[3]**

The Supreme Court, however, has cautioned that a statutory condition—even one attached to a waiver of the United States' sovereign immunity—is not accorded jurisdictional status unless "Congress has 'clearly state[d]' as much." *United States v. Kwai Fun Wong*, 575 U.S. 402, 409, 418-20 (2015) (citation omitted); *see Irwin v. Dep't of Veteran's Affs.*, 498 U.S. 89, 95-96 (1990). So if § 7609 "does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006) (15-employee minimum requirement for coverage under Title VII is "an element of a plaintiff's claim for relief, not a jurisdictional issue"); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160-66 (2010) (copyright registration requirement in 17 U.S.C. § 411(a) is not jurisdictional).

Here, the text of the statute clearly dictates that the United States' sovereign immunity waiver in § 7609 is subject to the exceptions in § 7609(c)(2). The language preceding the "exceptions" under § 7609(c)(2)—"[t]his section shall not apply to"—is almost identical to the language preceding the "exceptions" under 28 U.S.C. § 2680 in the Federal Tort Claims Act (FTCA)—"[t]he provisions of this chapter . . . shall not apply to[.]" The Supreme Court has interpreted § 2680 as setting forth exceptions to the United States' sovereign immunity waiver in the FTCA. *See, e.g.*, *Kosak v. United States*, 465 U.S. 848, 852 & n.6 (1984); *Millbrook v. United States*, 569 U.S. 50, 52 (2013); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004). Just as each of the "exceptions" in § 2680 suspends the FTCA (including the immunity waiver), the "exceptions" in § 7609(c)(2) suspend the whole statute. Thus, we read "[t]his section shall not

---

**[3]**Although we held in *Clay v. United States* that compliance with § 7609(b)'s 20-day period to file a petition to quash is a "condition of the United States' waiver of sovereign immunity," *Clay* is not on point here because the filing deadline is not one of the exceptions listed in subsection (c)(2). 199 F.3d at 879-80.

apply to . . ." as it was written:  The sovereign immunity waiver provision—one of the provisions of § 7609—does not apply to suits arising from the categories of summonses listed as "exceptions" in § 7609(c)(2).

We accordingly hold that if one of the exceptions applies, the bar of sovereign immunity remains, and the court lacks subject-matter jurisdiction.  But which party bears the burden of proof on this issue?  The plaintiff generally must establish a waiver of the United States' sovereign immunity.  *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir. 1990) ("The burden is on the plaintiff since the statute outlines the terms under which the United States has waived sovereign immunity and thereby consented to suit."); *see also Taylor v. Geithner*, 703 F.3d 328, 335 (6th Cir. 2013).[4]  Where statutory *exceptions* to an immunity waiver are at issue, however, we have said that "if the complaint is facially outside the exceptions" then the "the burden fall[s] on the government to prove the applicability of a specific" exception to the immunity waiver.  *Carlyle v. U.S., Dep't of the Army*, 674 F.2d 554, 556 (6th Cir. 1982); *accord Keller v. United States*, 771 F.3d 1021, 1023 (7th Cir. 2014); *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 n.2 (3d Cir. 2012); *Morales v. United States*, 895 F.3d 708, 713 (9th Cir. 2018); *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).  *But see Blueport Co., LLC v. United States*, 533 F.3d 1374, 1381 (Fed. Cir. 2008).  The basic rationale for treating sovereign immunity exceptions as affirmative defenses is that a plaintiff should not be required to prove a negative for each enumerated exception, and the government will generally possess the relevant facts to prove that a particular exception does apply.  *See Abunabba*, 676 F.3d at 333 n.2; *Prescott*, 973 F.2d at 702.  That rationale is equally relevant in the context of § 7609(c)(2)'s exceptions, and thus the rule in *Carlyle* applies.

In this case, the Gaetanos' petition to quash is not facially within any of § 7609(c)(2)'s exceptions.  Therefore, the Government must prove the applicability of a specific exception.

---

[4]This differs from State sovereign immunity under the Eleventh Amendment.  In such a case, the government bears the burden of showing that it is entitled to immunity.  *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963-64 (6th Cir. 2002).

3.

The relevant exception the Government invokes is § 7609(c)(2)(E). It states:

[Section 7609] shall not apply to any summons—

.     .     .     .

(i) issued by a criminal investigator of the Internal Revenue Service in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue laws; and

(ii) served on any person who is not a third-party recordkeeper (as defined in section 7603(b)).

26 U.S.C. § 7609(c)(2)(E). The Gaetanos concede that the second requirement is met because Portal 42, the party summoned here, is not a "third-party recordkeeper."[5] (Appellants' Br. at 10.) And we conclude that the Government has established the first requirement.

First, the summons issued to Portal 42 was "issued by a criminal investigator of the Internal Revenue Service," Agent Goodnight. *Id.* § 7609(c)(2)(E)(i). Not only does the face of

---

[5]Under 26 U.S.C. § 7603(b)(2), the term "third-party recordkeeper" means:

(A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501(c)(14)(A)),

(B) any consumer reporting agency (as defined under section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f))),

(C) any person extending credit through the use of credit cards or similar devices,

(D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(4))),

(E) any attorney,

(F) any accountant,

(G) any barter exchange (as defined in section 6045(c)(3)),

(H) any regulated investment company (as defined in section 851) and any agent of such regulated investment company when acting as an agent thereof,

(I) any enrolled agent, and

(J) any owner or developer of a computer software source code (as defined in section 7612(d)(2)).

Subparagraph (J) shall apply only with respect to a summons requiring the production of the source code referred to in subparagraph (J) or the program and data described in section 7612(b)(1)(A)(ii) to which such source code relates.

the summons attest to that fact—given that it was authorized by the IRS's Criminal Investigation Division and signed and served by Agent Goodnight—but Agent Goodnight also submitted a declaration stating that he is employed in the IRS's Criminal Investigation Division.  Second, the summons was issued "in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue laws."  *Id*.  Indeed, Agent Goodnight's declaration states that he is "conducting a criminal investigation into [the Gaetanos for the] alleged filing of false income tax and employment tax returns for tax years 2015 through 2018, and quarterly filings for 2019," and that he "issued the summons to Portal 42 to aid [his] criminal investigation."  Therefore, the exception in § 7609(c)(2)(E) applies.

The Gaetanos attempt to duck this conclusion.  Their sole argument is that the summons was not issued "in connection with a criminal investigation" because the summons identifies the "Periods" of January 1, 2015 to September 1, 2019.  No annual or quarterly tax period ends on September 1, 2019, so the Gaetanos surmise that the IRS cannot possibly investigate an offense for the "non-existent tax period" of January 1, 2019, through September 1, 2019.  *Cf. Boulware v. United States*, 552 U.S. 421, 424 (2008) ("One element of tax evasion under § 7201 is 'the existence of a tax deficiency'" (citation omitted)).  We are not persuaded.

The Gaetanos' argument hinges on their contention that the entry field for "Periods," on the face of the summons, refers to the *tax periods* under investigation, not the *time period* of records sought.  In support, the Gaetanos rely on the IRS's handbook, the Internal Revenue Manual.[6]  Agent Goodnight may have contravened the instructions of that Manual.  But that hardly means the summons was not issued "in connection with" an IRS criminal investigation.  26 U.S.C. § 7609(c)(2)(E)(i).  The fact remains that Agent Goodnight subsequently declared under oath that he is conducting a criminal investigation for tax years 2015 through 2018, and

---

[6]In Exhibit 25.5.2-1(4), titled "General Instructions for Preparation of a Summons," the Manual states:

> Periods: Insert all of the calendar years, fiscal years, quarterly or monthly periods involved in the examination or investigation. The periods should be specifically stated (e.g., quarterly periods ended March 31, 2010 and June 30, 2010). Do not use abbreviations such as 201006 or 6/30/2010.

*See* INTERNAL REVENUE SERVICE, 2019 INTERNAL REVENUE MANUAL, Exhibit 25.5.2-1(4) (2015); *see also id.* § 25.5.2(3).

quarterly filings for 2019.  The Gaetanos have not cited any binding authority precluding an IRS agent from submitting such an affidavit.

Nothing in § 7602 or § 7609 requires that a summons identify the tax period(s) the IRS is investigating.  Yet the Gaetanos insist that the IRS must state on a summons the specific tax periods the IRS is investigating, otherwise the summons cannot be enforced because a court is unable to determine one of the four required elements established in *United States v. Powell*, 379 U.S. 48 (1964)—that the records sought by the summons are "relevant to the [IRS's investigation]." *Id*. at 57-58.  The Gaetanos ignore altogether that an IRS agent's affidavit alone is typically sufficient to satisfy *Powell*'s requirements.  *See, e.g.*, *United States v. Stuart*, 489 U.S. 353, 360-61 (1989); *Byers v. United States*, 963 F.3d 548, 556-57 (6th Cir. 2020) (collecting cases).  But more importantly, the argument goes to the merits of whether a summons should be enforced or quashed.  We cannot proceed to the *Powell* test when § 7609 does not confer jurisdiction over this action.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  As such, the Gaetanos have placed the cart before the horse.[7]

In sum, because the exception in § 7609(c)(2)(E) applies, the bar of sovereign immunity remains, and subject-matter jurisdiction does not exist.

*                *                *

For the reasons stated, we AFFIRM.

---

[7]To be sure, jurisdiction under § 7609 is distinct from the substantive requirements to quash or enforce a summons.  Congress authorized the IRS to summon "any person" to obtain information "as *may be relevant* or material" to an investigation, 26 U.S.C. § 7602(a)(2) (emphasis added), and the Supreme Court has clarified that "even *potential* relevance" is sufficient, *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984).  The jurisdictional exception in § 7609(c)(2)(E) is even broader:  The first requirement is met if the summons is merely issued "in connection with" a criminal investigation to enforce the internal revenue laws.  26 U.S.C. § 7609(c)(2)(E)(i).  As a result, some taxpayers are not authorized to challenge a third-party IRS summons.  But if a taxpayer were permitted to fold the *Powell* analysis into the jurisdictional inquiry under § 7609(c)(2)(E)(i), the United States' sovereign immunity waiver would be "enlarged beyond what a fair reading of the text requires." *See Cooper*, 566 U.S. at 290.