RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0003p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

HANNA KARCHO POLSELLI; ABRAHAM & ROSE, P.L.C.;
JERRY R. ABRAHAM, P.C.,

      *Petitioners-Appellants*,

  *v.*

UNITED STATES DEPARTMENT OF THE TREASURY–
INTERNAL REVENUE SERVICE,

      *Respondent-Appellee*.

No. 21-1010

────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
No. 4:19-cv-10956—Stephanie Dawkins Davis, District Judge.

Decided and Filed: January 7, 2022

Before: MOORE, KETHLEDGE, and DONALD, Circuit Judges.

────────────────

## COUNSEL

**ON BRIEF:** Daniel W. Weininger, ABRAHAM & ROSE, P.L.C., Troy, Michigan, for Appellants. Michael J. Haungs, Geoffrey J. Klimas, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

  MOORE, J., delivered the opinion of the court in which DONALD, J., joined. KETHLEDGE, J. (pp. 18–21), delivered a separate dissenting opinion.

────────────────

## OPINION

────────────────

  KAREN NELSON MOORE, Circuit Judge. In pursuit of over $2 million of a taxpayer's unpaid liabilities, the IRS issued administrative summonses to the banks of the taxpayer's wife

and lawyers, Petitioners in this case. The IRS did not notify Petitioners of the summonses, relying on relevant provisions of the Internal Revenue Code excluding summonses issued "in aid of the collection" of tax assessments from its notice provisions. We conclude that the summonses were issued in aid of the IRS's collection efforts and that Petitioners were not entitled to notice. Because the United States waives sovereign immunity only when a taxpayer entitled to notice challenges a summons, the district court lacked subject-matter jurisdiction over Petitioners' proceedings to quash the summonses. Accordingly, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

Remo Polselli underpaid his federal taxes for over a decade. R. 6-2 (Bryant Decl. ¶ 2) (Page ID #59). For the periods in which he failed to pay the government, the IRS has made formal assessments[1] against him. *Id.* The outstanding balance of those liabilities is over $2 million. *Id.*

While investigating the location of assets to satisfy those liabilities, IRS Revenue Officer Michael Bryant learned that Remo[2] used entities to shield assets from collection. *Id.* ¶ 7 (Page ID #60–61). For example, in 2018, Remo paid approximately $290,000 toward his outstanding tax liabilities from the account of "Dolce Hotel Management LLC," rather than from his own bank account. *Id.*

Bryant suspected that Remo was concealing the balance of his assets elsewhere to shield them from the IRS. Bryant's investigation has revealed that Remo "may have access to and use of" bank accounts held in the name of his wife, Hanna Karcho Polselli. *Id.* ¶ 5 (Page ID #60). Based on this information, Bryant served a summons on Wells Fargo Bank, N.A. seeking

---

[1]In tax law, "the assessment is the official recording of liability that triggers levy and collection efforts." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004).

[2]We use Remo Polselli's and Hanna Karcho Polselli's first names to avoid confusion.

account and financial records of Hanna and Dolce Hotel Management LLC[3] "concerning" Remo. *Id.* ¶ 5, 7 (Page ID #60); R. 6-3 (Wells Fargo Summons at 1) (Page ID #65).

Bryant also learned that Remo was a long-time client of the law firm Abraham & Rose, P.L.C. R. 6-2 (Bryant Decl. ¶ 8, 9) (Page ID #61). Surmising that the law firm's financial records might reveal (1) the source of Remo's funds, (2) bank accounts associated with Remo, (3) entities Remo owned or controlled, or (4) bank accounts associated with those entities, Bryant served the law firm with a summons. *Id.* ¶ 8, 16 (Page ID #61, 62). In response, Abraham & Rose sent a letter in which it asserted attorney-client privilege and represented that the firm did not retain any of the documents that the IRS requested. R. 6-6 (Letter from Abraham & Rose to IRS at 1) (Page ID #77). When Bryant contacted the firm's representative possessing the power of attorney, Sheldon Mandelbaum, Mandelbaum repeated that the firm did not possess any documents responsive to the IRS's request. R. 6-2 (Bryant Decl. ¶ 12) (Page ID #61).

Bryant then pursued another avenue to locate the financial records. He issued identical summonses against JP Morgan Chase Bank, N.A. and Bank of America, N.A., seeking any financial records of Abraham & Rose and a related entity, Jerry R. Abraham, P.C. (the Law Firms), "concerning" Remo.[4] *Id.* ¶ 8; (Page ID #61); R. 6-4 (JP Morgan Chase Summons at 1) (Page ID #69); R. 6-5 (Bank of America Summons at 1) (Page ID #73).

Bryant did not notify Hanna or the Law Firms of the bank summonses. R. 3 (Suppl. Pet. to Quash ¶ 11) (Page ID #23). Wells Fargo alerted Hanna that the IRS had summoned her records, and she petitioned to quash the summons in district court. R. 8 (Opp'n to Mot. to Dismiss at 2) (Page ID #90); R. 1 (Pet. to Quash) (Page ID #1–18). After JP Morgan Chase and Bank of America notified the Law Firms of the summonses regarding their accounts, the Law Firms also petitioned to quash, and Hanna joined. R. 3 (Suppl. Pet. to Quash) (Page ID #21–34).

---

[3]Dolce Hotel Management, LLC never appeared in this action and did not contest the Wells Fargo summons seeking to obtain its financial information.

[4]The summonses also sought the bank records of entities that are no longer parties to this action.

The Petitioners alleged that the IRS failed properly to notify them of the summonses under Internal Revenue Code (I.R.C.) § 7609(a) (26 U.S.C. § 7609(a)). *Id.* ¶ 9.

The United States then moved to dismiss the petitions for lack of subject-matter jurisdiction. R. 6 (Mot. to Dismiss at 1) (Page ID #39). The Government explained that the relevant provisions of the Internal Revenue Code, § 7609(b)(2) and (h), waived its sovereign immunity from suit only for parties entitled to notice of the summonses under the code. R. 6 (Mot. to Dismiss at 8) (Page ID #46). Because the IRS was seeking the bank records "in aid of the collection" of Remo's assessed liability, the Government argued, Petitioners were not entitled to notice under § 7609(c)(2)(D)(i). *Id.* at 10 (Page ID #48). To afford the Law Firms an opportunity to ensure that the summoned records related only to Remo or entities affiliated with him, the Government also offered to allow the banks to produce the summoned records to the Law Firms prior to producing the records to the IRS. *Id.* at 16 n.5 (Page ID #54).

Petitioners opposed the motion, arguing that the Government's construction of § 7609 was "hyperliteral." R. 8 (Opp'n to Mot. to Dismiss at 5) (Page ID #93). They urged the court to apply a Ninth Circuit rule that narrowly construes § 7609 to exempt a summons from the notice requirements only if (1) "the third party is the assessed taxpayer," (2) "the third party is a fiduciary or transferee of the taxpayer," or (3) "the assessed taxpayer has 'some legal interest or title in the object of the summons.'" *Id*. at 7 (Page ID #95) (quoting *Viewtech, Inc. v. United States*, 653 F. 3d 1102, 1105 (9th Cir. 2011)). Petitioners also declined the Government's offer to allow the Law Firms to review the summoned records prior to production to the IRS. *Id.* at 16 (Page ID #104). The Government replied, attaching a supplemental declaration to show that Petitioners were not entitled to notice even under the Ninth Circuit's test. R. 9-3 (Bryant Suppl. Decl.) (Page ID #125–26). Hanna submitted a supplemental declaration, seeking to rebut that evidence. R.10 (Hanna Polselli Suppl. Decl.) (Page ID #146–49).

The district court agreed with the Government that the court lacked subject-matter jurisdiction. R. 11 (Dist. Ct. Order at 12) (Page ID #202). It found that "under the plain language of § 7609(c)(2)(D)(i), Petitioners are not entitled to notice under the circumstances, and as a consequence have no right to bring a petition to quash." *Id.* Petitioners appealed.

## II. ANALYSIS

### A.  Standard of Review

In challenging a district court's subject-matter jurisdiction over a proceeding, a party may present a "facial attack or a factual attack." *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021) (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)).  In a facial attack, a "movant accepts the alleged jurisdictional facts as true and 'questions merely the sufficiency of the pleading' to invoke federal jurisdiction." *Id.* (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)).  In a factual attack, a movant presents evidence outside of the pleadings to contest jurisdictional facts alleged in the petitions. *Id.*

Before the district court, the Government mounted a facial challenge to the petitions under its interpretation of Internal Revenue Code § 7609(c)(2)(D)(i), which excludes from notice requirements a summons issued "in aid of the collection" of "an assessment . . . against the person with respect to whose liability the summons is issued." R. 6 (Mot. to Dismiss at 7–14) (Page ID #45–52).  Without disputing the facts in the petition, the Government argued that Petitioners were not entitled to notice and thus that the district court lacked jurisdiction over the proceedings to quash under § 7609(b)(2).[5]  In concluding that Petitioners were not entitled to notice under § 7609(c)(2)(D)(i), the district court interpreted the text of the statute and did not weigh evidence.  "When the district court relies on a facial analysis, we review its findings de novo." *Carrier Corp.*, 673 F.3d at 440.  We also review de novo questions of statutory interpretation. *Byers v. United States Internal Revenue Serv.*, 963 F.3d 548, 552 (6th Cir. 2020).

### B.  Sovereign Immunity

The Government argues that sovereign immunity barred the district court from asserting jurisdiction over Petitioners' suits to quash the summonses.  As a government agency, the IRS is

---

[5]The Government also factually attacked the petitions by asserting that the relationships among the parties precluded Petitioners from entitlement to notice even under Petitioners' interpretation of § 7609(c)(2)(D)(i). R. 6 (Mot. to Dismiss at 14–16) (Page ID #52–54).  We review for clear error a district court's factual findings. *Carrier Corp.*, 673 F.3d at 440.  Because the district court declined to apply Petitioners' interpretation of § 7609(c)(2)(D)(i), however, it did not resolve any factual disputes.  Accordingly, there are no factual findings to review.

immune from suit absent an explicit statutory waiver. *Clay v. United States*, 199 F. 3d 876, 879 (6th Cir. 1999). We must construe strictly a waiver of sovereign immunity in favor of the United States. *Gaetano*, 994 F.3d at 506. "Any ambiguities in the statutory language are to be construed in favor of immunity, . . . so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012). We are particularly careful to construe § 7609(c)(2)(D)(i) in favor of immunity because "restrictions upon the IRS summons power should be avoided 'absent unambiguous directions from Congress.'" *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984) (quoting *United States v. Bisceglia*, 420 U.S. 141, 150 (1975), *partially superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, § 1205, 90 Stat. 1520, 1699–1703 (1976)).

Section 7609's notice provisions not only guide the IRS procedurally but also define the scope of the United States' sovereign immunity. Under § 7609(b)(2), "any person who is entitled to notice of a summons . . . shall have the right to begin a proceeding to quash such summons." We have thus held that § 7609(b)(2) waives the Government's sovereign immunity for a "narrow class of taxpayers" petitioning to quash an IRS summons seeking materials from a third-party recordkeeper. *Gaetano*, 994 F.3d at 506. Indeed, § 7609(h) explicitly grants district courts jurisdiction over any such proceeding. Consequently, federal district courts have subject-matter jurisdiction over petitions to quash summonses filed by any party that is entitled to notice under § 7609(a)(1). If one of the exceptions to the notice requirement applies, however, "the bar of sovereign immunity remains, and the court lacks subject-matter jurisdiction." *Id.* at 509. To determine whether the district court had jurisdiction over the petitions at issue, we must therefore determine whether Petitioners were entitled to notice of the Government's summonses.

## C. Scope of § 7609(c)(2)(D)(i)'s Notice Requirement Exception

"[T]he Government depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability." *Bisceglia*, 420 U.S. at 145. Recognizing "the possibility that some citizens may be less-than-forthcoming with their financial records," however, Congress has conferred upon the IRS the "broad authority to collect information related to taxpayers' potential liabilities." *Byers*, 963 F.3d at 552. To that end,

§ 7602 of the Internal Revenue Code authorizes the IRS to summon the "person liable for tax," any officer or employee of such person, or any other person it "may deem proper" to produce records that may be relevant to the tax inquiry.[6]  I.R.C. § 7602(a)(2).  The IRS may issue such a summons

> [f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability.

§ 7602(a).

The IRS may also seek information from third parties to advance its enforcement efforts. Section 7609 of the Code outlines special procedures for summonses when those third parties are recordkeepers, often banks or financial institutions maintaining records of financial transactions of interest to the IRS.  In general, the IRS must give notice to "any person . . . who is identified" in such a summons within three days of issuing the summons to the third-party recordkeeper. § 7609(a)(1).  The third-party recordkeeper then has at least twenty-three days to comply, and the IRS may not examine the records prior to that time.  § 7609(d).  These notice requirements, however, contain several exceptions.  As relevant here, the IRS is not required to notify the person or entity identified in a third-party recordkeeper summons when the summons is

> issued in aid of the collection of . . . (i) an assessment made or judgment rendered against the person with respect to whose liability the summons is issued; or (ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause (i).

§ 7609(c)(2)(D).

We agree with the district court that the summonses at issue fall squarely within the exception listed in § 7609(c)(2)(D)(i).  That section unequivocally provides that the IRS may summon the third-party recordkeeper of any person without notice to that person if (1) an assessment was made or a judgment was entered against a delinquent taxpayer and (2) the

---

[6]Section 7602 grants the authority to issue summonses to the Secretary of the Treasury.  § 7602(a).  The Secretary may delegate her tax enforcement duties to the Commissioner of Internal Revenue.  § 7803(a)(2) ("The Commissioner shall have such duties and powers as the Secretary may prescribe.").

summons was issued "in aid of the collection" of that delinquency.  We hold that as long as the IRS demonstrates that these conditions are satisfied, it may issue a summons to a third-party recordkeeper without notice to the person or entity identified in the summons.

The Government has satisfied its burden here.  The parties do not dispute that the IRS issued assessments against Remo totaling over $2 million.  R. 6-2 (Bryant Decl. ¶ 2) (Page ID #59).  Officer Bryant avers, and the parties similarly do not dispute, that he issued the summonses to the banks solely to "locate assets" to satisfy Remo's "existing assessed federal tax liability, and not to determine additional federal tax liabilities."  *Id.* ¶ 3 (Page ID #59–60).  Bryant issued the summonses to Petitioners' banks to obtain information about entities or persons with ties to Remo's assets—that is, "in aid of the collection" of "an assessment made . . . against the person with respect to whose liability the summons is issued" as authorized by § 7609(c)(2)(D)(i).  We therefore conclude that the district court lacked subject-matter jurisdiction over the petitions to quash.

Our holding aligns with the decisions of two of our sibling circuits.  In *Davidson v. United States,* 149 F.3d 1190 (Table), 1998 WL 339541 (10th Cir. June 9, 1998), the IRS assessed tax liability against the petitioner's husband.  The IRS issued a summons regarding the petitioner's bank records without notice, and the petitioner moved to quash.  Like Hanna, the petitioner argued that § 7609's notice provisions applied because she had no tax liability and the account was not jointly shared with her husband.  The Tenth Circuit examined the text of § 7609(c)(2)(B)(i) (now § 7609(c)(2)(D)(i)) and held that the petitioner was not entitled to notice.  "[T]he IRS was investigating whether a taxpayer fraudulently transferred funds to his wife," so the summons was issued "in aid of the collection" of her husband's assessed taxes.  *Id.* at *2.  Because the petitioner was not entitled to notice under § 7609(c)(2)(B)(i), the district court lacked subject-matter jurisdiction over the petitioner's suit to quash the summons.

The Seventh Circuit followed *Davidson* in *Barmes v. United States*, 199 F.3d 386 (7th Cir. 1999).  The IRS in that case assessed taxes against a general partnership and issued a summons of the bank accounts of a trust over which the general partners had signature authority.  *Id.* at 387.  The general partners moved to quash the summons, and the Seventh Circuit upheld the district court's dismissal of the petition to quash.  *Id.* at 390.  The Seventh Circuit "agree[d]

with the Tenth Circuit that as long as the third-party summons is issued to aid in the collection of any assessed tax liability the notice exception applies." *Id.* And under § 7609(c)(2)(D)(i), a petition to quash was not authorized.

Although we have not previously demarcated the scope of § 7609(c)(2)(D)(i), we have cited *Barmes* favorably in an unpublished opinion. In *United States v. AS Holdings Group, LLC*, a group of entities sought to intervene in an action to enforce an IRS third-party summons served on its contractor. 521 F. App'x 405, 406 (6th Cir. 2013). We affirmed the district court's finding that the would-be intervenor lacked a right to notice under § 7609, citing *Barmes*, because the summons was issued in aid of the collection of an assessment made or judgment rendered against one of the entities. *Id.* at 406. As these cases demonstrate, the text of § 7609(c)(2)(D)(i) dictates a straightforward outcome: "as long as the third-party summons is issued to aid in the collection of any assessed tax liability the notice exception applies." *Barmes*, 199 F.3d at 390.

Petitioners argue that the analysis cannot be that simple, relying on *Ip v. United States*, 205 F.3d 1168 (9th Cir. 2000). In that case, the IRS summoned petitioner's bank account without notice after it had levied an assessment against a corporation for which petitioner's fiancé was the agent. *Id*. at 1169. The Ninth Circuit examined § 7609's legislative history and concluded that the statute's stated purpose was generally to facilitate notice to taxpayers and to enable them to challenge summonses in district court. *Id.* at 1172. Because it assumed that Congress would not have allowed the IRS to summon a third-party recordkeeper for the information of any person without notice, the Ninth Circuit held that the notice exception applies "only where the assessed taxpayer 'has a recognizable [legal] interest in the records summoned.'" *Id.* at 1176 (quoting *Robertson v. United States*, 843 F. Supp. 705, 706 (S.D. Fla. 1993)) (alteration in original). The taxpayer corporation in *Ip* lacked a legal interest in petitioner's bank account, so the court concluded that the petitioner was entitled to notice. *Id.* at 1176, 1177. Under the *Ip* rule, the IRS may issue a summons to a third-party recordkeeper without notice only if (1) the third party is the assessed taxpayer, (2) the third party is a fiduciary or transferee of the taxpayer, or (3) the assessed taxpayer has "some legal interest or title in the object of the summons." *Viewtech*, 653 F.3d at 1105.

We decline to adopt the *Ip* rule.  "Only when following the literal language of the statute would lead to 'an interpretation which is inconsistent with the legislative intent or to an absurd result' can a court modify the meaning of the statutory language."  *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 254 (6th Cir. 2020) (quoting *Tenn. Prot. & Advoc., Inc. v. Wells*, 371 F.3d 342, 350 (6th Cir. 2004)).  Although Petitioners criticize the IRS's interpretation of the statute as "hyperliteral," Appellants' Br. at 10, we may not depart from the literal text of the statute when it comports with legislative intent.  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571 (1982))).  As explained below, our interpretation of § 7609 is consistent with Congress's intent generally to exempt from its notice requirements summonses issued in aid of collection of assessments.

In urging us to conclude otherwise, Petitioners first reiterate the Ninth Circuit's concern that the IRS's interpretation of the exception outlined in § 7609(c)(2)(D)(i) is so broad as to render clause (ii) superfluous.  Appellants' Br. at 20; *see also TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (stating that a statute should be construed so that, if possible, "no clause, sentence, or word shall be superfluous, void, or insignificant.").  According to Petitioners, "transferee and fiduciary liability cannot exist without the taxpayer's underlying assessment."  Appellants' Br. at 21.  The only way to prevent clause (i) from absorbing clause (ii), Petitioners contend, is to confine the application of clause (i) to situations in which the taxpayer has some legal interest in the object of the summonsed records.  *Id.* at 20.  Petitioners argue that the *Ip* test solves this problem because clause (ii) expands the application of § 7609(c)(2)(D) to situations in which the summons seeks the records of assets that a taxpayer transferred to a transferee or fiduciary but no longer legally controls.  *Id.*

We disagree that our interpretation renders clause (ii) meaningless.  Transferee and fiduciary liability are indeed derivative of the taxpayer's assessment, so Petitioners are correct in asserting that the former cannot exist without the latter.  Laurence F. Casey, Federal Tax Practice § 12:04 (Edward J. Smith, ed., 4th ed. 2021) ("[W]here there is no deficiency, there can be no

transferee liability."). But the substantive law underlying the liability for taxpayers and their transferees or fiduciaries is distinct. The IRS determines the extent of a taxpayer's liability, which forms the basis for the assessment. *See* I.R.C. § 6203 ("The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary."). By contrast, "[t]he legal underpinning for holding a transferee liable is found in the state law of the relevant jurisdiction." *United States v. Westley*, 7 F. App'x 393, 399 (6th Cir. 2001) (citing *Comm'r v. Stern*, 357 U.S. 39 (1958)). Although the IRS has a statutory mechanism to collect a transferee's or fiduciary's liability, I.R.C. § 6901, that statute "neither creates nor defines a substantive liability." *Stern*, 357 U.S. at 42. The IRS's efforts to collect a taxpayer's liability—which stems from the IRS's own assessment—are thus legally and procedurally distinct from their collection efforts of the transferee's or fiduciary's liability—which liability must be rooted in state law.

Summonses issued in aid of collecting a transferee's or fiduciary's liability, moreover, may seek information only obliquely related to the underlying taxpayer. Suppose Remo fraudulently conveyed some of his assets to party A, who is married to party B. Party B, in this example, bears no relation to Remo. Suppose also that the IRS prevails in a suit against Party A for fraudulent transfer or in a summary proceeding under Internal Revenue Code § 6901. The IRS, in this hypothetical, suspects that Party A is hiding assets with his spouse, party B. Clause (ii) clarifies that the IRS could summon party B's bank records to assist in its collection of party A's liability, even when party B has nothing to do with Remo, and even when the IRS has not made a formal assessment of party A's tax liability. Without clause (ii), party B's relationship to Remo may have been too tangential for the IRS to show that its summons was "in aid of the collection" of *Remo*'s outstanding assessment. Clause (ii) also clarifies that the IRS may issue a summons in aid of Party A's unassessed liability rather than Remo's assessment (which would fall under clause (i)).

The dissent notes that summonses issued in aid of the collection of a fiduciary or transferee's liability derive ultimately from the original assessment on a taxpayer, and so a summons issued under clause (ii) would be covered under our interpretation of clause (i). We agree that our interpretation of the statute leads to some redundancy, but that does not give us

license to add limiting language to the statute.  "We find it much more likely that Congress employed a belt and suspenders approach" to clarify the scope of the conduct covered by the statute than that Congress intended us to adopt a meaning rooted nowhere in the statute's text. *See Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1350 n.5 (2020) ("Sometimes the better overall reading of the statute contains some redundancy." (quoting *Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S.Ct. 873, 881 (2019))); *see also Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172 n.7 (2021) (noting that Congress's decision to include for clarity two subsections in statutory definition covering the same conduct is not superfluity).  Congress intended to clarify that the IRS does not need to give notice when it issues summonses in aid of the collection of a liability of a transferee or fiduciary.  We do not find that clarification meaningless.

Petitioners also endorse the Ninth Circuit's conclusion that the IRS's interpretation hinders the statute's overall aim of providing taxpayers with notice of third-party summonses. Appellants' Br. at 12–13.  The provisions exempting summonses issued in aid of collection of assessments, in Petitioners' view, would consume the general rule encouraging notice of third-party recordkeeper summonses.  *Id.* at 13.  The "general rule," however, is broader than the Ninth Circuit and Petitioners contend.  The Ninth Circuit's concern that "it is virtually impossible to conceive of any situation where the notice requirement would apply once an assessment of tax liability against anyone has been made" led it to conclude that the statute must be "fraught with ambiguity."  *Ip*, 205 F.3d at 1173.  But "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  *Roth v. Guzman*, 650 F.3d 603, 614 (6th Cir. 2011) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

Section 7609(c)(1) applies the notice requirement "to any summons issued under paragraph (2) of section 7602(a) or under section 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7612." This means that the IRS must provide notice when issuing summonses related to any of its non-collection functions, which include determining the correctness of any return, determining a person's tax liability, and examining books and records.  Under § 7602(b), the IRS must also provide notice of summonses issued in its investigatory capacity before it has made an assessment or obtained a judgment. *See Scotty's Contr. & Stone, Inc. v. United States*, 326 F.3d

785, 787 (6th Cir. 2003) (holding that entity was entitled to notice of third-party summonses issued as part of investigation into owner's tax liabilities).  The notice requirement applies to many summonses issued in aid of IRS functions other than collection.  Excluding summonses issued in aid of IRS collection efforts from the notice requirement, therefore, hardly absorbs the general rule requiring the IRS to notify persons and entities identified in third-party recordkeeper summonses.  In concluding that the text of § 7609 is ambiguous, the Ninth Circuit overlooked the other functions of the IRS and read too much into Congress's intent to notify taxpayers of third-party recordkeeper summonses.

The Ninth Circuit also leaned on legislative history in interpreting § 7609 without cause to do so.  "Because a literal reading of the unambiguous text" of § 7609 "does not lead to an absurd result, we have no cause to reach beyond the text and rely on legislative history." *Donovan*, 983 F.3d at 254.  Even if § 7609 is "difficult and opaque" enough to warrant looking into extrinsic sources, *Ip*, 205 F.3d at 1177 (O' Scannlain, J., concurring), its legislative history does not conflict with our interpretation.  As part of the Tax Reform Act of 1976, Congress did seek to protect taxpayer privacy when it enacted the notice requirements for third-party recordkeeper summonses.  The Report of the House Ways and Means Committee explained that "the use of [the third-party summons as an] important investigative tool should not unreasonably infringe on the civil rights of taxpayers."[7]  H.R. Rep. No. 94-658, at 307 (1975).  It reasoned that the then-existing ability of a third-party recordkeeper, such as a bank, to challenge a summons did not afford taxpayers with sufficient privacy protections because "the interest of the third-party witness in protecting the privacy of the records in question is frequently far less intense than that of the person to whom the records pertain."  *Id.*  To "cure[]" these problems, the Committee decided that the "parties to whom the records pertain" should be given notice of the third-party summons.  *Id.*

Congress, however, recognized that it must balance this right to privacy with the IRS's ability to collect on an assessment or judgment.  The House Ways and Means Committee

---

[7]The Senate Finance Committee Report addressing § 7609 contains language identical to the House Ways and Means Committee report.  S.Rep. No. 94-938, pt.1, at 368-69 (1976).

generally stated that "this procedure will not apply in the case of a summons used solely for purposes of collection." *Id.* at 310. The Committee provided only one example of an instance in which the notice exception does not apply: when the IRS is "attempting to obtain information concerning the taxpayer's account for purposes other than collection." *Id.* Nothing in the Committee Report constrains the exception to instances in which the parties possess some legal interest in the object of the summons. The legislative history of § 7609, therefore, does not change our interpretation of the statute.

Petitioners emphasize the "far-reaching privacy implications" of a broad interpretation of § 7609 and argue that these concerns "spurred Congress to enact . . . § 7609 in the first place." Appellants' Br. at 23. As the Government highlights, other provisions in the Internal Revenue Code afford parties some privacy protections. Appellee's Br. at 35. Section 6103 prohibits the IRS from disclosing "return information," which includes, among other things, "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments." I.R.C. § 6103(a), (b)(2). If, for example, the information the IRS discovers leads to information that is embarrassing to Hanna or the Law Firms, § 6103 prevents the IRS from sharing it with another person or entity.

Hanna argues that her financial information does not qualify as "return information" under § 6103 because it "does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer," § 6103(b)(2), and her financial records cannot be connected to Remo. Appellants' Reply Br. at 11. We are not persuaded that § 6103's protection of confidentiality is so limited. For one thing, we do not see why Hanna would not count as a "particular taxpayer" under § 6103. *See Aloe Vera of Am., Inc. v. United States*, 699 F.3d 1153, 1156 (9th Cir. 2012) ("Taxpayer information obtained or prepared by the IRS . . . is 'return information' regardless of the person with respect to whom it was obtained or prepared.") (quoting *Mallas v. United States*, 993 F.2d 1111, 1118 (4th Cir. 1993)). But even if Hanna were not the "particular taxpayer" § 6103 contemplates, it would be difficult for the Government to argue both that Hanna's records are unrelated, "directly or indirectly," to Remo

under § 6103(b)(2) and that her records will "in aid of the collection" of Remo's liability under § 7609(c)(2)(D)(i). Section 6103 thus provides Hanna some privacy protections.

Section 7602(a)(2) also limits the scope of the summonses issued to third-party recordkeepers. Under that section, the IRS may summon an individual to provide information "as may be relevant or material" to an IRS inquiry. § 7602(a)(2). Any information irrelevant to the collection of a taxpayer's assessed liability—in this case, bank account information that does not relate to Remo, his assets, or related entities—would thus lie outside the scope of an IRS summons. This limitation is borne out in the summonses that the IRS issued to the banks in this case, which all specify that they seek information "concerning the person identified" in the summons. R. 6-3 (Wells Fargo Summons at 1) (Page ID #65); R. 6-4 (JP Morgan Chase Bank Summons at 1) (Page ID #69); R. 6-5 (Bank of America Summons at 1) (Page ID #73). In this way, § 7602(a)(2) protects private information that does not pertain to the IRS's collection efforts regarding Remo's assessment.

Petitioners protest that those protections are insufficient. Although we are sympathetic to worries that the IRS may be able to access information regarding blameless third parties without notice, "this possibility was not thought by Congress to create a sufficient infringement to warrant the inclusion of additional statutory notice requirements for unidentified persons." *United States v. First Bank*, 737 F.2d 269, 274 (2d Cir. 1984). Given that the IRS may share any information with the Department of Justice for criminal prosecution under Internal Revenue Code § 6103(h)(2), Petitioners worry that the IRS may summon information from a third-party recordkeeper and then use against them information obtained through the summons, violating the "Fourth Amendment's prohibition against searches and seizures absent probable cause." Appellants' Reply Br. at 12. Notifying Petitioners of the summonses, however, would not impose a heightened burden for the government to examine their records. *See* H.R. Rep. No. 94-658, at 309 ("[T]hese [notice] provisions are not intended to expand the substantive rights of these parties."). Petitioners' concern with the information-sharing mechanisms between the IRS and the Justice Department does not implicate the notice requirement and is therefore outside the scope of this appeal.

If Petitioners worry about their inability to challenge an improperly issued third-party summons in court, they may pursue other avenues.  Because we have held that "the IRS may validly issue summonses for the purpose of investigating criminal offenses," *Scotty's Contr.*, 326 F.3d at 788, Petitioners hypothesize that the IRS could issue a summons solely to investigate a criminal offense without giving the object of the investigation notice and an opportunity to challenge the summons.  Appellants' Reply Br. at 11–12.  But the exception to the notice provisions, and the related jurisdictional bar, are tied to the IRS's *collection* efforts.  Individuals suspecting that the IRS harbors ulterior motives are free to challenge the summons in court and may even seek jurisdictional discovery on the issue.  *See Haber v. United States*, 823 F.3d 746, 751, 753 (2d Cir. 2016) (engaging in a "preliminary review of the IRS's contention that it issued the challenged summons in aid of collection").  Petitioners argue that *Haber* illustrates the futility of such challenges because the court ruled in favor of the IRS in that case.  In *Haber*, however, the petitioner offered "no affirmative reason to believe that there was any ulterior purpose to the summons."  *Id*. at 752.  If the taxpayer had made "a showing of facts that give rise to a plausible inference of improper motive," his challenge would have been successful.  *Id.* at 754 (quoting *United States v. Clarke*, 573 U.S. 248, 254 (2014)).  A challenge to the government's motives does not seem as insurmountable a hurdle as Petitioners contend.  *See Clarke*, 573 U.S. 254 (holding that a petitioner need not proffer a "fleshed out case" to present a plausible inference of bad faith of IRS agent).

In sum, Petitioners' conjectural fears do not defeat Congress's prerogative to prioritize the IRS's collection efforts over taxpayer privacy.  Any other result would significantly impede the IRS's "expansive information-gathering authority."  *Arthur Young*, 465 U.S. at 816. Congress explained that the impetus for excluding the notice requirement from collection efforts is to prevent individuals from hiding their assets.  *See* H.R. Rep. No 94-658 at 310 (explaining exemptions to notice provisions prevent the possibility that the taxpayer could use the extra time to withdraw assets indirectly, thus "frustrating the collection activity of the Service.").  One can easily imagine how a delinquent taxpayer could shield money from the IRS under Petitioners' view.  Remo could have, for example, transferred money from an alter ego company to a bank account solely under Hanna's name.  Once the IRS gave Hanna notice of the summons, she would have twenty-three days to transfer that money elsewhere before the bank would be

required to respond to the summons. I.R.C. § 7609. Petitioners would require that the IRS prove that Remo transferred assets to them in order to justify the issuance of a summons on their bank accounts without notice. But how would the IRS accomplish that without access to the information in the bank accounts? We conclude that the IRS does not need to navigate such a Catch-22 to seek information about delinquent taxpayer obligations it has already assessed.

## D. Petitioners' Remaining Arguments

Because we decline to adopt the *Ip* test, we need not apply it to the facts of this case. Even though the district court reached the same result, Petitioners argue that it abused its discretion by failing to consider Hanna's supplemental declaration. Appellants' Br. at 28–29. Hanna submitted that declaration to refute the IRS's argument that Hanna's relationship with Remo would have survived the *Ip* test should we choose to adopt it. *Id.* at 28 ("Hanna filed a supplemental declaration for the limited purpose of countering [Officer Bryant's] supplemental declaration."). Without the *Ip* test, however, the legal relationship between Remo and Hanna is irrelevant. The district court did not need to consider these declarations and therefore did not abuse its discretion in declining to do so.

We also decline Petitioners' invitation to address the merits in this case. Petitioners were not entitled to notice of the IRS's summonses of their bank accounts, so the district court lacked subject-matter jurisdiction over their proceedings to quash them. *See Gaetano*, 944 F.3d at 511. The district court could not address the propriety of the summons without subject-matter jurisdiction over the petitions to quash, and neither can we. *See Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 556 (6th Cir. 2005) ("Being without jurisdiction, the District Court could not, and we cannot, address the merits of Plaintiff's complaint.").

## III. CONCLUSION

Because the summonses the IRS issued regarding Petitioners' bank accounts were "in aid of the collection" of the assessments against Remo Polselli, we conclude that Petitioners were not entitled to notice under Internal Revenue Code § 7609 and that the district court therefore lacked subject-matter jurisdiction over Petitioners' proceeding to quash the summonses. We therefore **AFFIRM** the judgment of the district court.

—————————

**DISSENT**

—————————

KETHLEDGE, Circuit Judge, dissenting. The Supreme Court has expressed "a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment." *Penn. Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 562 (1990). In my view, respectfully, that is how the government and now the majority have interpreted 26 U.S.C. § 7609(c)(2)(D)(i) here. By way of background, § 7609(a)(1) generally requires that, when the IRS serves a summons upon a third party for records held on behalf of another person "identified in the summons," the IRS must provide that identified person with notice of the summons. As relevant here, for example, if the IRS orders a bank to produce a particular customer's account records, the IRS must provide that customer with notice of the summons. More to the point, "any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash" that summons. *Id*. § 7609(b)(2). Only a person entitled to notice of a summons, therefore, can seek judicial review of whether the summons is lawful.

Judicial review of the lawfulness of three summonses is all that Hanna Polselli and the petitioner law firms seek here. A single IRS agent issued summonses to three banks—Wells Fargo, JP Morgan Chase, and Bank of America—directing them to "appear before" the agent "to give testimony" and "to produce for examination[,]" among other things, "all bank statements relative to the accounts" of Hanna and the two law firms. That is a significant intrusion upon the privacy of those account holders. *Cf.* U.S. Const. Amend. IV ("The right of the people to be secure in their . . . papers . . . against unreasonable searches and seizures, shall not be violated"). Indeed that is the archetype of what the Founding generation would have called "inquisitorial process," as opposed to due process of law. Yet the district court dismissed these petitions for review on the ground that Hanna and the two law firms were not entitled to any notice of the production of their account records and thus not entitled to challenge the lawfulness of the summonses that required that production.

Whether the petitioners had a right to judicial review of those summonses, under the law as it comes to us, depends on the meaning of § 7609(c)(2)(D). That subsection states, in relevant part, that the IRS need not provide notice of "any summons" that is

> (D) issued in the aid of the collection of—
>
>> (i) an assessment made or judgment rendered against the person with respect to whose liability the summons is issued; or
>>
>> (ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause (i)[.]

The question, more specifically, is whether the summonses to the banks fell within the scope of § 7609(c)(2)(D)(i). If they did, the petitioners were not entitled to notice of the summonses and thus cannot obtain judicial review of them either. The government argues—and the majority agrees—that the summonses did fall within the scope of § 7609(c)(2)(D)(i), "because the summonses here were issued in the aid of the collection of previously assessed tax liabilities." Gov't Br. at 4. Thus, in the government's view, § 7609(c)(2)(D)(i) applies whenever two conditions are met: first, a tax assessment was previously rendered against someone else; and second, the summons would be helpful in the collection of that assessment. The identity of the person whose records are the object of the summons—and her relationship, if any, with the delinquent taxpayer—is immaterial. According to the government, therefore, the IRS need not provide notice to *any* person whose records are the object of a summons "issued in the aid of the collection of" a tax assessment rendered against someone else.

The problem with that interpretation, plainly enough, is that it renders § 7609(c)(2)(D)(ii) superfluous. The liability "of any transferee or fiduciary" of a taxpayer against whom the IRS has rendered an assessment—as that liability is referred to in § 7609(c)(2)(D)(ii)—is entirely derivative of *that assessment*; for recovering against the transferee or fiduciary of the assessed taxpayer is simply another way of collecting the assessment itself. On that point everyone agrees. *Every* summons "issued in aid of the collection of" the liability of a "transferee or fiduciary" of an assessed taxpayer, therefore, is "issued in the aid of the collection of" that assessment. Again nobody argues otherwise. Thus, every summons that falls within § 7609(c)(2)(D)(ii) already falls within the government's (and now the majority's) interpretation of § 7609(c)(2)(D)(i)—because every such summons is "issued in the aid of the collection of

previously assessed tax liabilities." Gov't Br. at 4. If the government and the majority are right about their interpretation of § 7609(c)(2)(D)(i), therefore, Congress was wasting its time in writing § 7609(c)(2)(D)(ii).

The attempts of the government and the majority to revive § 7609(c)(2)(D)(ii) only underscore its superfluity under their interpretation of § 7609(c)(2)(D)(i). For all its experience administering the tax code, the government offers not a single concrete example of a summons that falls within § 7609(c)(2)(D)(ii) but not (D)(i)—choosing instead to assert that (D)(ii) "makes clear" that the IRS need not provide notice "when seeking financial records of an individual or entity with no discernable connection to the assessed taxpayer, but with a relationship to the taxpayer's transferee or fiduciary." Gov't Br. at 33. But on the government's own reading of § 7609(c)(2)(D)(i), whether the person whose records are the object of the summons has some "discernable connection to the assessed taxpayer" is irrelevant; all that matters, in the government's own formulation, is that the summons was "issued in the aid of the collection of previously assessed tax liabilities." Gov't Br. at 4. And every summons to which § 7609(c)(2)(D)(ii) applies undisputedly meets that test. The majority, for its part, offers a hypothetical in which the assessed taxpayer transfers assets to "party A," who then transfers them to "party B"; the majority then asserts without any reasoning or authority that a summons for party B's records "may be too tangential for the IRS to show that its summons was 'in the aid of the collection'" of the assessment against the taxpayer. Maj. Op. at 14. But of course the summons for B's records is "in aid of the collection of" the outstanding assessment; that is why the IRS issued the summons in the first place. For the liability of any transferee is undisputedly derivative of the taxpayer's liability on the assessment.

The mistake of the government and the majority is to read § 7609(c)(2)(D)(i) in isolation. Their interpretation of that provision indeed renders § 7609(a)—which prescribes a general rule that persons whose records are the object of a summons are entitled to notice of that summons— entirely superfluous as to summonses issued in aid of collecting a previously assessed tax liability. The Ninth Circuit concluded as much in *Ip v. United States*, where they observed that the government's interpretation of the same provision at issue here (then codified as § 7609(c)(2)(B)(ii)) "vitiates completely the legislative purpose of providing notice to third

parties because it would be difficult to hypothesize any situation where notice would be required once the IRS makes an assessment against any taxpayer and seeks to collect the tax." 205 F.3d at 1174. The same is true as to § 7609(b), which gives such persons a "right to begin a proceeding to quash" summonses that order production of their records. For once an assessment is rendered, every summons issued with respect to that assessment is, in a literal sense, "issued in aid of collection of" it. The literal sense of "in aid of the collection of" must therefore be the problem with the government's interpretation here.

Reading § 7609 as a whole, I think the only way to give concrete meaning to §§ 7609(c)(2)(D)(i) and (D)(ii), and to avoid the "vitiation" of §§ 7609(a) and (b), is to read "in aid of collection of" more narrowly than it would ordinarily be read. In the context of all these provisions, rather, I think we must read that phrase to require a more direct connection between the summons and the "collection" of the liability of the persons described in §§ 7609(c)(2)(D)(i) and (D)(ii). Specifically, I agree with the Ninth Circuit that a summons has this more direct connection with the collection of those persons' liability "only where the assessed taxpayer[,]" in the case of § 7609(c)(2)(D)(i), or a fiduciary or transferee, in the case of § 7609(c)(2)(D)(ii), "has a recognizable legal interest in the records summoned." 205 F.3d at 1176 (cleaned up). In this case we must either maul the bulk of § 7609 or read narrowly one phrase within it. The Ninth Circuit's interpretation, in my view, is the least bad interpretation available to us here.

I respectfully dissent.